IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **ARMADA LEASING, LLC** | § | **Case No. 17-32498-11** |
| | § | |
| **HIGH COUNTRY** | § | **Case No. 17-32503-11** |
| **TRANSPORTATION, INC.,** | § | |
| | § | **[Jointly Administered Under** |
| | § | **Case No. 17-32498-11]** |
| | § | |
| Debtors. | § | **Chapter 11** |

### THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF HIGH COUNTRY TRANSPORTATION, INC. AND ARMADA LEASING, LLC

Matthew S. Okin
Texas Bar No. 00784695
David L. Curry, Jr.
Texas Bar No. 24065107
**OKIN ADAMS LLP**
1113 Vine St, Suite 201
Houston, Texas 77002
Tel: 713.228.4100
Fax: 888.865.2118
mokin@okinadams.com
dcurry@okinadams.com

Raymond J. Urbanik
Texas Bar No. 20414050
**OKIN ADAMS LLP**
3811 Turtle Creek Blvd.,
Suite 780
Dallas, Texas 75219
Tel:  214.382.4995
Fax: 888.865.2118
rurbanik@okinadams.com

**ATTORNEYS FOR THE DEBTORS**

Dated:  May 29, 2018

TABLE OF CONTENTS

Page

ARTICLE I.  DEFINED TERMS, RULES OF INTERPRETATION, CONSTRUCTION OF
TERMS, COMPUTATION OF TIME, AND GOVERNING LAW ............................................. 1
    A. Defined Terms .......................................................................................  1
    B. Rules of Interpretation and Construction of Terms ..................................................... 11
    C. Computation of Time ....................................................................................... 11
    D. Governing Law .............................................................................................. 12
    E. Reference to Monetary Figures ........................................................................... 12
    F. Reference to the Debtors or the Reorganized Debtors ................................................ 12
    G. Incorporation of Documents by Reference ............................................................. 12

ARTICLE II.  ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS ......................... 12
    A. Administrative Claims ..................................................................................... 12
    B. DIP Financing Claims  .................................................................................... 13
    C. Professional Compensation Claims ...................................................................... 13
    D. Priority Unsecured Tax Claims .......................................................................... 14

ARTICLE III.  CLASSIFCATION AND TREATMENT OF CLAIMS AND INTERESTS ..... 14
    A. Classification in General  .................................................................................. 14
    B. Summary of Classification of Claims and Interests .................................................... 15
    C. Treatment of Claims and Interests ....................................................................... 15
    D. Special Provision Governing Unimpaired Claims ..................................................... 21
    E. Elimination of Vacant Classes ........................................................................... 21
    F. Voting Classes, Presumed Acceptance by Non-Voting Classes .................................... 21
    G. Intercompany Interests .................................................................................... 22
    H. Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ............................. 22
    I. Controversy Concerning Impairment ................................................................... 22
    J. Subordinated Claims ....................................................................................... 22
    K. No Waiver ................................................................................................... 22

ARTICLE IV.  MEANS FOR IMPLEMENTATION OF THE PLAN ................................... 22
    A. Corporate Existence  ....................................................................................... 22
    B. Reorganized Debtors ...................................................................................... 23
    C. Sources of Plan Distributions ............................................................................ 23
    D. Vesting of Assets in Reorganized Debtors ............................................................. 23
    E. Corporate Action  .......................................................................................... 23
    F. Directors and Officers of the Reorganized Debtors ................................................... 24
    G. Effectuating Documents; Further Transactions ....................................................... 24
    H. Retained Causes of Action ................................................................................ 24

ARTICLE V.  TREATMENT OF EXECUTORY CONTRACTS & UNEXPIRED LEASES .... 24
    A. Assumption and Rejection of Executory Contracts and Unexpired Leases .................... 24
    B. Indemnification Obligations .............................................................................. 25
    C. Claims Based on Rejection of Executory Contracts or Unexpired Leases ...................... 25
    D. Cure of Defaults for Executory Contracts and Unexpired Leases Assumed ................... 25
    E. Preexisting Obligations to the Debtors under Executory Contracts and Unexpired
Leases ............................................................................................................ 26
    F. Modifications, Amendments, Supplements, Restatements, or Other Agreements ......... 26

G. Reservation of Rights..........................................................................................26
H. Nonoccurrence of Effective Date .........................................................................27
I. Contracts and Leases Entered Into After the Petition Date.....................................27

ARTICLE VI.  PROVISIONS GOVERNING DISTRIBUTIONS ............................................ 27
A. Timing and Calculation of Distributions ..............................................................27
B. Rights and Powers of Reorganized Debtors to Make Distributions ............................28
C. Delivery of Distributions and Undeliverable or Unclaimed Distributions ...................28
D. Manner of Payment............................................................................................29
E. Distributions to Holders of Disputed Claims .........................................................29
F. Section 1145 Exemption .....................................................................................29
G. Compliance with Tax Requirements ....................................................................30
H. Allocations ......................................................................................................30
I. No Postpetition Interest on Claims........................................................................30
J. Foreign Currency Exchange Rate .........................................................................30
K. Setoffs and Recoupment ....................................................................................30
L. Claims Paid or Payable by Third Parties ...............................................................31

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND
DISPUTED CLAIMS ........................................................................................................ 32
A. Claims Administration Responsibilities ...............................................................32
B. Estimation of Claims and Interests ......................................................................32
C. Adjustment to Claims or Interests Without Objection .............................................32
D. Time to File Objections to Claims .......................................................................32
E. Disallowance of Claims or Interests.....................................................................33
F. Amendments to Claims or Interests ......................................................................33
G. No Distributions Pending Allowance ...................................................................33
H. Distributions After Allowance ............................................................................33

ARTICLE VIII.  SETTLEMENT, RELEASE, INJUNCTION & RELATED PROVISIONS .... 34
A. Release of Debtors ............................................................................................34
B. Release of Liens ...............................................................................................34
C. Releases by the Debtors .....................................................................................35
D. Releases by Holders of Claims and Interests .........................................................35
E. Exculpation......................................................................................................35
F. Injunction........................................................................................................36
G. Channeling Injunction .......................................................................................36
H. Protections Against Discriminatory Treatment ......................................................37
I. Reimbursement or Contribution ...........................................................................37

ARTICLE IX.  CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION
OF THE PLAN ................................................................................................................37
A. Conditions Precedent to Confirmation .................................................................37
B. Conditions Precedent to Effectiveness..................................................................37
C. Waiver of Conditions ........................................................................................38
D. Effect of Failure of Conditions ...........................................................................38

ARTICLE X.  MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ........38
A. Modifications and Amendments ..........................................................................38
B. Effect of Confirmation on Modifications...............................................................38

C. Revocation or Withdrawal of Plan .................................................................................38
ARTICLE XI. RETENTION OF JURISDICTION ......................................................................39

ARTICLE XII.  MISCELLANEOUS PROVISIONS  .................................................................41
A. Immediate Binding Effect  ..............................................................................................41
B. Additional Documents ......................................................................................................41
C. Payment of Statutory Fees ...............................................................................................41
D. Reservation of Rights .......................................................................................................42
E. Successors & Assigns........................................................................................................42
F. Notices ...............................................................................................................................42
G. Term of Injunction or Stays.............................................................................................42
H. Entire Agreement  ............................................................................................................43
I. Exhibits...............................................................................................................................43
J. Nonseverability of Plan Provisions ..................................................................................43
K. Votes Solicited in Good Faith .........................................................................................43
L. Closing the Bankruptcy Cases..........................................................................................44
M. Waiver or Estoppel  .........................................................................................................44
N. Controlling Document .......................................................................................................44

# INTRODUCTION

High Country Transportation, Inc. and Armada Leasing, LLC, as Debtors and Debtors-in-Possession in the above captioned Bankruptcy Cases hereby propose this Plan of reorganization under Bankruptcy Code section 1121 for the resolution of outstanding Claims against, and Interests in, the Debtors. Holders of Claims or Interests may refer to the Disclosure Statement Filed in conjunction with the Plan for a summary and description of the Plan and certain related matters.

# ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, CONSTRUCTION OF TERMS, COMPUTATION OF TIME, AND GOVERNING LAW

## A.    Defined Terms

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have meanings ascribed to them in this Article. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

***Administrative Claim*** or ***Administrative Expense Claims*** means a Claim, Cause of Action, right, or other liability, or the portion thereof, that is entitled to priority under Bankruptcy Code sections 326, 327, 330, 503(b), 506(c), 507(a)(2), 507(b), and 1103, including (i) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and/or in connection with operating the Debtors' businesses (such as wages, salaries, or payments for goods and services); (ii) Professional Compensation Claims; and (iii) all fees and charges assessed against the Estates under 28 U.S.C. § 1930. The term Administrative Claim specifically excludes the Intercompany Claim.

***Administrative Claim Bar Date*** means, except as provided in Article II herein, the first Business Day that is thirty (30) days after the Effective Date or such earlier deadline as established by an order of the Bankruptcy Court.

***Affiliate*** has the meaning prescribed in Bankruptcy Code section 101(2).

***Allowed*** means, with respect to any Claim or Interest, except as otherwise provided in the Plan, a Claim or Interest allowable under Bankruptcy Code section 502: (a) for which a Proof of Claim or proof of interest was timely Filed, and as to which no objection or other challenge to allowance thereof has been Filed, or if an objection or challenge has been timely Filed, such Claim or Interest is allowed by Final Order; (b) for which a Proof of Claim or proof of interest is not Filed and that has been listed in a Debtors' Schedules of Assets and Liabilities or Schedule of Equity Security Holders and is not listed as disputed, contingent, or unliquidated; or (c) that is deemed allowed under the Plan. For purposes of determining the amount of an Allowed Claim or Allowed Interest, there shall be deducted therefrom the amount of any claim that the Debtors

1

may hold against the Holder of such Claim under Bankruptcy Code section 553 or under the doctrine of recoupment.

*Allowed Claim* means a Claim or any portion thereof (i) that has been allowed by a Final Order, (ii) that either has been Scheduled as a liquidated, non-contingent, undisputed Claim in an amount greater than zero in the Debtors' Schedules, as the same may from time to time be amended in accordance with the Bankruptcy Code, Bankruptcy Rules or order of the Bankruptcy Court, or is the subject of a timely Filed Proof of Claim as to which either no objection to its allowance has been Filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court, or any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, or (iii) that is expressly allowed in a liquidated amount in the Plan; provided, however that with respect to an Administrative Claim, "Allowed Claim" means an Administrative Claim as to which a timely request for payment has been made in accordance with this Plan (if such written request is required) or other Administrative Claim, in each case as to which (i) a timely objection has not been Filed, or (ii) a timely objection is Filed and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order.

*Allowed […] Claim* means an Allowed Claim in the particular Class or category specified.

*Allowed […] Interest* means an Allowed Interest in the particular Class or category specified.

*Armada* means Debtor Armada Leasing, LLC.

*Avoidance Actions* means any and all actual or potential Claims and Causes of Action that may be commenced before or after the Effective Date, to avoid a transfer of property or an obligation incurred by any of the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code, or under similar or related state or federal statutes and common law.

*Ballot* means the applicable form or forms of ballot(s) to be distributed to Holders of Claims entitled to vote on the Plan and on which the acceptance or rejection of the Plan is to be indicated.

*Bankruptcy Cases* means the Chapter 11 bankruptcy cases commenced by the Debtors upon the Filing of the voluntary petitions on the Petition Date; styled *In re Armada Leasing, LLC*, Case No. 17-32498-11, and *In re High Country Transportation, Inc.*, Case No. 17-32503-11, jointly administered under Case No. 17-32498-11.

*Bankruptcy Code* means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

*Bankruptcy Court* means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

*Bankruptcy Estates* or *Estates* means the estates of the Debtors created under section 541 of the Bankruptcy Code upon the Filing of the Bankruptcy Cases.

***Bankruptcy Rules*** means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and as applicable to the Bankruptcy Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Bankruptcy Cases or proceedings therein, as the case may be.

***Bar Date*** means November 6, 2017, the date established by the Bankruptcy Court by which Proofs of Claim must be Filed with respect to such Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims or Interests for which the Bankruptcy Court entered an order excluding Holders of such Claims or Interests from the requirement of Filing Proofs of Claim.

***Business Day*** means any day other than a Saturday, Sunday, or a "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

***Cash*** means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

***Causes of Action*** means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) Avoidance Actions; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

***Claim*** means a claim against any portion of the Debtors' Bankruptcy Estates, whether or not asserted, as defined in section 105(5) of the Bankruptcy Code.

***Claims Register*** means the official register of Claims.

***Class*** means a category of Claims or Interests as described in the Plan pursuant to Bankruptcy Code section 1122(a).

***Class 7 Settlement*** means the settlement between the Debtors, the Released Parties, and members of the Settlement Class whereby each member of the Settlement Class agrees to exchange its General Unsecured Claim for a Settlement Class Claim and grant full releases (as set forth in Article VIII herein) on the Effective Date in exchange for treatment in Class 7.

***CM/ECF*** means the Bankruptcy Court's Case Management and Electronic Case Filing system.

***Confirmation*** means entry by the Bankruptcy Court of the Confirmation Order confirming this Plan.

***Confirmation Date*** means the date of entry by the Bankruptcy Court of the Confirmation Order.

***Confirmation Hearing*** means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan.

***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code § 1129.

***Consummation*** means the occurrence of the Effective Date.

***Convenience Class Claim*** means a General Unsecured Claim that is under $5,000.00 or has been voluntarily reduced to $5,000.00 by the Holder of such Claim electing treatment in Class 6.

***Cure Claim*** means a Claim based upon the Debtors' defaults on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors pursuant to Bankruptcy Code section 365.

***Cure Claim Submission Deadline*** means May 21, 2018, the date by which all alleged amounts accrued or alleged defaults through the Effective Date must be Filed with the Bankruptcy court.

***Current Directors and Officers*** means the directors and officers of the Debtors who were directors and officers of the Debtors as of the Petition Date.

***Debtor*** means one of the Debtors.

***Debtors*** means, collectively, High Country Transportation, Inc. and Armada Leasing, LLC.

***DIP Financing Agreement*** means the stipulation between High Country Transportation, Inc. and Marquette Transportation Finance, LLC [Doc. No. 14-1], including any subsequent amendments thereto, and the corresponding Loan Documents, as defined therein.

***DIP Financing Order*** means the *Final Order (I) Approving Stipulation and Agreement Regarding Debtor High Country Transportation LLC's Motion for Post-Petition Financing and Use of Cash Collateral; (II) Granting Liens and Security Interests Pursuant to 11 U.S.C. § 364(c); and (III) Authorizing Use of Cash Collateral.* [Doc. No. 55].

***DIP Financing Claim*** means a Claim held by Marquette, as the DIP Lender, arising under or relating to the DIP Financing Agreement or the DIP Financing Order, including any and all fees, interest paid in kind, and accrued but unpaid interest and fees arising under the DIP Financing Agreement, and all obligations defined thereunder.

***Disclosure Statement*** means the disclosure statement (including all Exhibits and schedules thereto or referenced therein) regarding the Plan, as may be amended, modified, or supplemented.

***Disclosure Statement Approval Order*** means the Final Order or Final Orders approving the Disclosure Statement.

***Disputed Claim*** means a Claim in a particular Class as to which a Proof of Claim has been Filed or is deemed to have been Filed under applicable law or an Administrative Claim as to which an objection has been Filed in accordance with the Plan, the Bankruptcy Code or the Bankruptcy

4

Rules, which an objection has not been withdrawn or determined by a Final Order. For purposes of the Plan, a Claim is a Disputed Claim prior to any objection to the extent that (a) the amount of a Claim specified in a Proof of Claim exceeds the amount of any corresponding Claim scheduled by the Debtors in the Schedules of Assets and Liabilities; (b) any corresponding Claim scheduled by the Debtors in the Schedules of Assets and Liabilities has been scheduled as disputed, contingent or unliquidated, irrespective of the amount scheduled; (c) no corresponding Claim has been scheduled by the Debtors in the Schedules of Assets and Liabilities; or (d) the Claim is subject to disallowance pursuant to Bankruptcy Code section 502(d).

***Disputed Claims Reserve*** means the reserve to be established under the Plan and held by the Debtors from any unencumbered Cash for the benefit of the Holders of Disputed Claims, pending allowance, in an amount equal to the Holder's Pro Rata share of their respective Class.

***Distribution Order*** means an order from the Bankruptcy Court authorizing the distribution of funds to creditors.

***Distribution Record Date*** means the Confirmation Date.

***Effective Date*** means the date that is the first Business Day after the Confirmation Date, on which (a) no stay of the Confirmation Order is in effect, and (b) all conditions to the effectiveness of the Plan have been satisfied or waived as provided in the Plan.

***Entity*** means any Person, estate, trust, Governmental Unit, or United States trustee, as set forth in Bankruptcy Code section 101(15).

***Estate Property*** means all right, title, and interest in and to any and all property of every kind or nature, owned by the Debtors or their Estates on the Petition Date as defined by Bankruptcy Code section 541.

***Estates*** means the bankruptcy estates of the Debtors and all Estate Property comprising the Debtors' bankruptcy estates within the meaning of Bankruptcy Code section 541.

***Exculpated Parties*** means, collectively, the Debtors and Marquette, and with respect to each of the foregoing Entities, any of their respective current officers, directors, Professionals, advisors, accountants, attorneys, investment bankers, consultants, employees, agents and other representatives (but solely in the their capacity as such).

***Executory Contract*** means an executory contract or unexpired lease as such terms are used in Bankruptcy Code section 365, including all operating leases, capital leases, and contracts to which any Debtor is a party or beneficiary.

***Exhibit*** means an exhibit annexed to the Plan or to the Disclosure Statement, as the context requires.

***File***, ***Filed***, or ***Filing*** means, as to any document or pleading, properly and timely file, filed or filing with the Bankruptcy Court or its authorized designee in the Bankruptcy Cases.

***Final Order*** means an order or judgment of the Bankruptcy Court, as entered on the docket in the Debtors' Bankruptcy Cases, the operation or effect of which has not been stayed, reversed, or

amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was Filed or, if Filed, remains pending.

**GAAP** means generally accepted accounting principles as in effect from time to time in the United States.

**General Unsecured Claim** means an Unsecured Claim that is not: (a) an Administrative Claim; (b) a Professional Compensation Claim; (c) a Priority Tax Claim; (d) a Priority Non-Tax Claim; or (e) an Intercompany Claim; provided, however, that a Holder of a Claim electing treatment under Class 5 or 6 shall not be entitled to a General Unsecured Claim.

**Governmental Unit** means any governmental unit, as defined in Bankruptcy Code section 101(27).

**Guaranteed Quarterly Distribution** means a minimum guaranteed amount of $250,000.00 to be distributed to Holders of Allowed Claims and Interests in accordance with the terms of the Plan.

**High Country Transportation** or **HCT** means Debtor High Country Transportation, Inc.

**Holder** means (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim Filed with respect to such Claim, or (ii) if no Proof of Claim has been Filed with respect to such Claim, the owner or holder of such Claim as such is reflected on the Schedules or the books and records of the Debtors or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has assigned or transferred the Claim to a third party and the Debtors have received sufficient written evidence of such assignment or transfer, the assignee or transferee; and (b) as to any Equity Interest, the record owner or holder of such Equity Interest as shown on the stock register that is maintained by the Debtors or as otherwise determined by order of the Bankruptcy Court.

**Impaired** or **Impairment** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of Bankruptcy Code section 1124.

**Insider** has the meaning set forth in Bankruptcy Code section 101(31).

**Interest**, **Equity Interest**, or **Membership Interest** means any ownership interest in the Debtors, as of the Petition Date, including, but not limited to, an interest in any issued, unissued, authorized or outstanding shares or stock, including ordinary shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in the Debtors, whether or not transferable, together with any warrants, options, or contractual rights to purchase or acquire such interests at any time and all rights arising with respect thereto.

**Interim DIP Financing Order** means the *Interim Order: (I) Approving Stipulation and Agreement Regarding Debtor High Country Transportation Inc.'s Motion for Post-Petition Financing and Use of Cash Collateral; (II) Granting Liens and Security Interests Pursuant to 11 U.S.C. § 364(c); and (III) Authorizing the Use of Cash Collateral*. [Doc. No. 28].

**IRS** means the Internal Revenue Service.

***Judicial Code*** means title 28 of the United States Code, 28 U.S.C. §§ 1 – 4001.

***Lien*** means a lien, security interest, or other interest or encumbrance asserted against any Estate Property as defined in Bankruptcy Code section 101(37).

***Marquette*** means Marquette Transportation Finance, LLC.

***Notice Parties*** means the Debtors, Marquette, and the United States Trustee.

***Ordinary Course Professional*** means a Professional employed and retained pursuant to the Ordinary Course Professionals Order.

***Ordinary Course Professionals Order*** means the *Order Granting Debtors' Expedited Motion for Entry of an Order Authorizing the Debtors to Retain and Compensate Professionals Utilized in the Ordinary Course of Business* [Docket No. 91].

***Other Collateral*** means Retained Collateral that is not a Tractor or Trailer.

***Other Distributable Proceeds*** means the proceeds of the liquidation of unencumbered assets of the Estate, including but not limited to, proceeds derived from the prosecution of Causes of Action.

***Other Secured Claim*** means any Secured Claim that is not a DIP Financing Claim, Secured Tractor Claim, Secured Trailer Claim, or Secured Tax Claim.  Other Secured Claims shall not include any such claims secured by Liens that are avoidable, unperfected, subject to subordination, or otherwise unenforceable.

***Person*** means and includes natural persons, corporations, limited partnerships, general partnerships, joint ventures, trusts, land trusts, business trusts, unincorporated organizations, or other legal entities, regardless of whether they are governments, agencies, or political subdivisions thereof.

***Petition Date*** means June 29, 2017, the date on which the Debtors commenced the Bankruptcy Cases.

***Plan*** means the Chapter 11 Plan of Reorganization Filed by the Debtors, as such document may be amended or modified.

***Plan Distribution*** means a payment or distribution to Holders of Allowed Claims, Allowed Interests, or other eligible Entities under the Plan.

***Plan Documents*** means, collectively those documents in furtherance of Consummation of the Plan and/or to be executed in order to consummate the transactions contemplated under the Plan, which may be Filed by the Debtors with the Bankruptcy Court.

***Preference Causes of Action*** means any and all actual or potential Causes of Action to avoid a transfer of property or an obligation incurred by either of the Debtors pursuant to section 547 of the Bankruptcy Code.

***Priority Non-Tax Claim*** means a Claim asserted under Bankruptcy Code sections 507(a)(3-7 and 9-10).

***Priority Tax Claim*** means an Claim asserted under Bankruptcy Code section 507(a)(8).

***Professional*** means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

***Professional Compensation Claim*** means a Claim for compensation or reimbursement of expenses of a Professional incurred on and after the Petition Date and prior to the Effective Date, including fees and expenses incurred in preparing final fee applications and participating in hearings on such applications, and requested in accordance with the provisions of Bankruptcy Code sections 326, 327, 328, 330, 331, 502(b) or 1103.

***Professional Compensation Claim Bar Date*** means, except as provided in Article II herein, forty-five (45) days after the Effective Date.

***Professional Compensation Claim Objection Deadline*** means twenty-four (24) days after the Professional Compensation Claim Bar Date.

***Proponents*** mean the Debtors.

***Proof of Claim*** means a proof of Claim Filed against either of the Debtors in the Bankruptcy Cases by the applicable Bar Date.

***Pro Rata*** means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

***Reinstate***, ***Reinstated***, or ***Reinstatement*** means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with Bankruptcy Code section 1124.

***Released Party*** means, collectively, and in each solely in their capacities as such, the Debtors, and with respect to the Debtors, their Professionals, successors, assigns, subsidiaries, Affiliates, managed accounts and funds, Current Directors and Officers, principals, shareholders, members, partners, managers, employees, subcontractors, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Entities' respective heirs, executors, estates, servants, and nominees.

***Releasing Party*** means (i) Holders of all Claims or Interests who vote to accept the Plan; (ii) the Holders of Claims or Interests that are Unimpaired under the Plan; (iii) the Holders of Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan; and (iv) the Holders of Claims or Interests who vote to reject the Plan but do not opt out of granting the releases set forth herein. This term specifically includes any Holder of

a Claim or Interest being paid in full under the terms of the Plan or any party electing treatment under Classes 6 and 7 of the Plan.

***Reorganized Debtors*** means, collectively, the Debtors, or any successors or assigns, by merger, consolidation, or otherwise, on and after the Effective Date.

***Retained Causes of Action*** means all Causes of Action that belong to the Debtors, but shall not include any action against a Released Party.

***Retained Collateral*** means any Tractor, Trailer, or Other Collateral that is subject to a Pre-Petition Agreement (as defined in the Sale Procedures Order) and that has not been sold or voluntarily surrendered pursuant to the Sale Procedures Order.

***R.W. Timms*** means, collectively, R.W. Timms Leasing, LLC and R.W. Timms TX Investments, LLC.

***R.W. Timms Adversary Proceeding*** means adversary proceeding no. 17-03081 initiated by the Debtors on September 22, 2017.

***R.W. Timms Proceeds*** means the funds realized from the settlement of the R. W. Timms Adversary Proceeding.

***Sale Procedures Order*** means the Bankruptcy Court's *Order on Debtor's Motion, Pursuant to Bankruptcy Code Sections 105(a); 363, and 365, and Bankruptcy Rules 2002, 6004, and 6006 for Entry of an Order: (I) Approving Abbreviated Notice and Sale Procedures; (II) Authorizing Debtors' Sale of Certain Assets Free and Clear of All Liens, Claims Encumbrances, and Other Interests; (III) Approving Adequate Protection for Equipment Lessors; and (IV) Granting Related Relief* [Doc. No. 56].

***Sale Proceeds*** means the proceeds resulting from a sale of the Debtors' assets pursuant to the Sale Procedures Order.

***Schedules*** means, collectively, the Schedule of Assets and Liabilities, Schedule of Deficiency Claims, Schedule of Equity Security Holders, Schedule of Rejected Contracts and Leases, and Schedule of Retained Causes of Action.

***Schedule of Assets and Liabilities*** means the schedules of assets and liabilities Filed by the Debtors in the Bankruptcy Cases, as may be amended, modified, or supplemented.

***Schedule of Deficiency Claims*** means the schedule of deficiencies with respect to Secured Claims as provided in Article III.C hereof.

***Schedule of Equity Security Holders*** means the schedule of Interests required to be Filed pursuant to Bankruptcy Rule 1007(a)(3).

***Schedule of Rejected Contracts and Leases*** means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors, to be Filed as an Exhibit to the Plan and/or Disclosure Statement.

***Schedule of Retained Causes of Action*** means the Retained Causes of Action set forth on the schedule to be Filed as an Exhibit to the Plan and/or Disclosure Statement.

***Secured Tax Claim*** means a Secured Claim for taxes held by a Governmental Unit, including cities, counties, school districts, and hospital districts, (a) entitled by statute to assess taxes based on the value or use of real and personal property and to obtain an encumbrance against such property to secure payment of such taxes or (b) entitled to obtain an encumbrance on property to secure payment of any tax claim specified in Bankruptcy Code section 507(a)(8). Secured Tax Claims shall not include any such Claims secured by liens / security interests that are avoidable, unperfected, subject to subordination, or otherwise unenforceable.

***Secured Tractor Claim*** means a Claim, whether arising from a lease or security agreement, that is (a) secured by a Lien on any Tractor in the Debtors' fleet to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

***Secured Trailer Claim*** means a Claim (a) secured by a Lien on any Trailer owned by the Debtors to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

***Securities Act*** means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a-77aa, or any similar federal, state, or local.

***Settlement Class*** means any General Unsecured Claim that is not already included in Class 6 for which a Ballot has been submitted on which the Holder of such Claim has elected treatment as a Class 7 Settlement Class Claim and has affirmatively accepted the Class 7 Settlement.

***Settlement Class Claim*** means a General Unsecured Claim that has been voluntarily reduced by one-third (33.33%) by the Holder of the Claim.

***Settlement Pool*** means the pool of funds in the amount of $800,000.00 established by the Debtors for distribution to the Settlement Class pursuant to the Class 7 Settlement.

***Solicitation*** means solicitation in accordance with the Disclosure Statement Approval Order of votes under the Plan.

***Solicitation Materials*** means the Disclosure Statement (including all Exhibits and appendices), Ballot, and any other materials to be used in the Solicitation of votes on the Plan.

***Subordinated Claim*** means a Claim that is subordinated to General Unsecured Claims pursuant to (a) a contract or agreement, (b) a Final Order declaring that such Claim is subordinated in right or payment, or (c) any applicable provision of the Bankruptcy Code, including Bankruptcy Code section 510, or other applicable law. Subordinated Claims specifically include any Claim for punitive damages provided for under applicable law.

***Tractor*** means a truck in the Debtors' fleet of trucks as of the Petition Date.

***Trailer*** means a trailer in the Debtors' fleet of trailers as of the Petition Date.

***Unexpired Lease*** means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under Bankruptcy Code section 365.

***Unimpaired*** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of Bankruptcy Code section 1124.

***Unsecured Claim*** means a Claim that is not a Secured Claim and that is not entitled to priority under Bankruptcy Code section 507(a)(1-9).   The term specifically includes, pursuant to Bankruptcy Code section 506(a), any Claim of a creditor against the Debtors to the extent that such creditor's Claim is greater than the value of the Lien securing such Claim, any Claim for damages resulting from rejection of any Executory Contract or Unexpired Lease under Bankruptcy Code section 365, any tort Claims or contractual Claims or Claims arising from damage or harm to the environment and, and any Claim not otherwise classified under the Plan.

***Voting Classes*** means a Class entitled to vote to accept or reject the Plan.

***Voting Deadline*** means May 21, 2018, the deadline by which Ballots to accept or reject the Plan must be received by Debtors' counsel in order to be counted.

## B.    Rules of Interpretation and Construction of Terms

For purposes of this Plan: (1) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (2) any reference in this Plan to an existing document or Exhibit Filed or to be Filed means that document or Exhibit is it may have been or may be amended, supplemented, or otherwise modified; (3) unless otherwise specified, all references in this Plan to Sections or Articles are references to Sections or Articles of or to this Plan; (4) the words "herein," "hereto," "hereunder," and other words of similar import refer to this Plan in its entirety rather than to a particular portion of this Plan; (5) captions and headings contained in the Plan are inserted for convenience and reference only, and are not intended to be part of or to affect the interpretation of the Plan; (6) wherever appropriate from the context, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender; (7) any reference to an Entity as a Holder of a Claim or Interest includes the Entity's successors and assigns; (8) any reference to docket numbers of documents Filed in the Bankruptcy Cases are references to docket numbers under the Bankruptcy Court's CM/ECF system; and (9) the rules of construction set forth in Bankruptcy Code section 102 and the Bankruptcy Rules shall apply.

## C.    Computation of Time

All times referenced in this Plan are prevailing Central Time.  In computing any period of time, date, or deadline prescribed or allowed in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  If the date on which a transaction may or must occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

### D.    Governing Law

Subject to the provisions of any contract, certificate of incorporation, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules.

### E.    Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

### F.    Reference to the Debtors or the Reorganized Debtors

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

### G.    Incorporation of Documents by Reference

This Plan incorporates by reference certain documents relating to the Debtors that are not presented herein or delivered herewith.  The documents that have been Filed in the Bankruptcy Cases are incorporated by reference herein in their entirety, including all amendments thereto Filed prior to the date set for Confirmation, including the following documents: (a) the Debtors' Schedules of Assets and Liabilities [Doc. No. 64] and (b) the Statements of Financial Affairs, including exhibits [Doc. No. 66], filed on August 7, 2017.  Documents and pleadings Filed in the Bankruptcy Cases are available at the following website: http://www.txsb.uscourts.gov.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims, Professional Compensation Claims, DIP Financing Claims, and Priority Tax Claims have not been classified for purposes of voting on, or receiving distributions under, the Plan, and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

### A.    Administrative Claims

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Reorganized Debtors, each Holder of an Allowed Administrative Claim (other than Holders of Professional Compensation Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter; or (2) if such Administrative claim is not Allowed as of the Effective Date, no later than ten (10) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter.

Except for Professional Compensation Claims, and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Reorganized Debtors no later than the Administrative Claim Bar Date. Objections to such requests must be Filed and served on the Reorganized Debtors and the requesting party by the later of (i) thirty (30) days after the Effective Date or (ii) thirty (30) days after the Filing of the applicable request for payment of the Administrative Claims, if applicable. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to File and serve a request for such payment of such Administrative Claims that do not File and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Reorganized Debtors or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Reorganized Debtors or any action by the Bankruptcy Court. For the avoidance of doubt, the Administrative Claim Bar Date shall not apply to Ordinary Course Professionals. Pursuant to the Ordinary Course Professionals Order, the Ordinary Course Professionals are paid in the ordinary course of business.

## B. **DIP Financing Claims**

The DIP Financing Claims shall be Allowed in an amount equal to the amount of such DIP Financing Claims accrued or incurred as of the Effective Date, subject to the provisions of the DIP Financing Order and this Plan. Except to the extent that a Holder of an Allowed DIP Financing Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each such Allowed DIP Financing Claim shall be paid in full in Cash by the Debtors on the Effective Date, without setoff, deduction or counterclaim. Upon the payment of the DIP Financing Claims in accordance with the terms of the Plan, on the Effective Date, all Liens and security interests granted to secure such Allowed DIP Financing claims shall be terminated and of no further force and effect.

## C. **Professional Compensation Claims**

1. *Final Fee Applications and Payment of Professional Compensation Claims*

All requests for payment of Professional Compensation Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than the Professional Compensation Claim Bar Date; provided, however, that Ordinary Course Professionals shall be compensated in accordance with the terms of the Ordinary Course Professionals Order. Objections to Professional Compensation Claims must be Filed and served on the Reorganized Debtors and the Professional to whose application the objections are addressed no later than the Professional Compensation Claim Objection Deadline. The Bankruptcy Court shall determine the Allowed amounts of such Professional Compensation Claims after notice and hearing in accordance with the procedures established by the Bankruptcy Court. Allowed Professional Compensation Claims shall be paid by the Debtors in Cash within ten (10) days of the entry of a Final Order allowing such Claims.

2. *Post Confirmation Fees and Expenses*

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1003 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

D.   **Priority Tax Claims**

To the extent that the Holders of Allowed Priority Tax Claims have not already been paid, satisfied or otherwise released prior to the Effective Date, and except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of any in exchange for each Allowed Priority Tax Claim shall receive on the later of (i) the Effective Date; (ii) the date such Priority Tax Claim becomes an Allowed Claim; (iii) the date on which such Allowed Priority Tax Claim first becomes due and payable; or (iv) as soon thereafter as is reasonably practicable, an amount in Cash equal to the unpaid amount of such Allowed Priority Tax Claim; provided, however, that the Reorganized Debtors, shall have the right to pay any Allowed Priority Tax Claim, or the remaining balance of such Claim, in full in Cash at any time on or after the Effective Date, without premium or penalty.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.   **Classification in General**

Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied.

**B.**      **Summary of Classification of Claims and Interests**

The classification of Claims and Interests against the Debtors pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Allowed Priority Non-Tax | Unimpaired | Not Entitled to Vote |
| Class 2 | Marquette Allowed Secured Claim | Impaired | Not Entitled to Vote |
| Class 3 | Allowed Secured Tractor Claims | Impaired | Entitled to Vote |
| Class 4 | Allowed Secured Trailer Claims | Impaired | Entitled to Vote |
| Class 5 | Other Secured Claims | Impaired | Entitled to Vote |
| Class 6 | Convenience Class | Unimpaired | Not Entitled to Vote |
| Class 7 | Settlement Class | Impaired | Entitled to Vote |
| Class 8 | Allowed General Unsecured Claims | Impaired | Entitled to Vote |
| Class 9 | Equity Interests | Unimpaired | Not Entitled to Vote |

**C.**      **Treatment of Claims and Interests**

1. *Class 1* – Except to the extent that a Holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, each Holder of an Allowed Priority Non-Tax Claim shall receive, on or after the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Priority Non-Tax Claim, (i) payment in full in Cash of its Allowed Class 1 Claim; or (ii) such other treatment as is consistent with the requirements of Bankruptcy Code section 1129(a)(9). Class 1 is Unimpaired under the Plan. Holders of Allowed Claims in Class 1 are not entitled to vote to accept or reject the Plan

2. *Class 2* – The principal balance and interest of the Class 2 Allowed Secured Claim of Marquette against HCT was paid in full during the pendency of the Bankruptcy Cases. However, Marquette reserved the right to impose the termination fee under the pre-petition loan documents. The DIP Financing Claim was $270,058.34 as of April 1, 2018, as it may be adjusted by payments made to Marquette during these Bankruptcy Cases, as it may vary from day to day based on the current aggregate accounts receivable financed pursuant to the DIP Financing Agreement and the DIP Financing Order, and by the inclusion of interest, reasonable fees, charges, and costs that are proper under the DIP Financing Agreement and the DIP Financing Order and by virtue of Marquette being an over-secured creditor.

15

Pursuant to the terms of the DIP Financing Agreement and the DIP Financing Order, the full amount of the DIP Financing Claims are due and payable upon Confirmation of the Plan. Additionally, upon Confirmation, Marquette would be entitled to charge Debtor a termination fee of $50,000.00. However, Marquette has agreed to waive the termination fee in consideration for the treatment provided hereunder and as an inducement to provide a new loan to the Reorganized Debtors, as set forth herein.

Marquette will provide new financing to HCT pursuant to the terms of Advance Plus Revolving Credit and Security Agreement ("Exit Financing"), on the same terms as the DIP Financing Agreement. Armada agrees to execute a new unsecured guaranty of the Exit Financing provided to HCT. The Exit Financing will be used first to pay in full the then-outstanding balance of the DIP Financing Claim, in including all accrued interest, reasonable attorney fees and expenses, and other charges described in the parties' loan documents and the DIP Financing and DIP Order. Marquette will continue to provide financing to HCT's ongoing post-Confirmation operations. The Exit Financing shall be secured by the assets of HCT described as ("Exit Financing Collateral"):

> All present and future Accounts, all of Debtor's other accounts; chattel paper, instruments, payment intangibles, general intangibles, and documents whether or not considered an Account under the terms of this Agreement; all assets including, without limitation, records, inventory, equipment of every kind and description (other than rolling stock consisting of titled tractors and trailers of Debtor and any proceeds of any kind or nature arising from or relating to the lease, sale or disposition of the tractors and trailers); furniture and fixtures; deposit accounts; money; investment property; letters of credit; notes; tax refunds and insurance proceeds, all as defined in the Uniform Commercial Code and all proceeds thereof, but specifically excluding any causes of action arising under Chapter 5 of the Code.

Marquette shall have and retain its first priority lien and security interest in, to and against the Exit Financing Collateral for all amounts relating to its DIP Financing Claim, including all rights granted to Marquette in the DIP Financing and the DIP Order. Marquette shall continue to provide financing to HCT following Confirmation and prior to the execution of the Exit Financing, such financing shall be included in and subject to all of the terms and conditions, and secured by the same liens and security interests as described in the DIP Stipulation. Marquette shall have all of the rights and remedies provided herein with respect to any and all such financing. Upon entry of the Confirmation Order, the liens granted to Marquette in the Exit Financing Confirmation Order shall be deemed to continue to be first, valid and perfected as against all third parties, without regard to applicable federal, state or local filing and recording statutes, nunc pro tunc as of the date of Confirmation and without further action of any party, including Marquette. Marquette may, but need not, take such steps as it deems desirable to perfect its liens in the Exit Financing Collateral. All of its liens shall relate back to the date of their original perfection, without interruption.

Upon Confirmation of the Plan, and in consideration of the undertaking set forth herein, Debtors shall automatically and forever remise, release, discharge Marquette and

each of its subsidiaries and affiliates, corporations, companies, divisions, predecessors, successors and assigns and each and all of their directors, officers, employees, attorneys, accountants, consultants and other agents, of and from any and all claims, demands, agreements, contracts, covenants, actions, suits, causes of action, obligations, controversies, costs, expenses, accounts, damages, judgments, losses and liabilities of whatever kind or nature, in law, equity or otherwise whether known or unknown, whether or not concealed or hidden, which they have had, may have had, or now have, or which any of their predecessors, successors or assigns hereafter can, shall or may have, for or by reason of any matter, cause, or thing whatsoever, whenever arising to and including the date of Confirmation, including, but without limitation, any and all claims or causes of action which were or might have been asserted in the Bankruptcy Cases, or any adversary proceeding that may be commenced or may have been commenced in connection therewith, including any right to surcharge the collateral of Marquette under Section 506(c) of the Bankruptcy Code. The release shall be immediately effective upon Confirmation, without the necessity of any further act and shall be binding upon the Debtor and all of its subsidiaries and affiliated corporations and all trustees, receivers, managing agents, disbursing agents and trustees, including any subsequent Chapter 7 or Chapter 11 trustee appointed in this case.

Class 2 is Impaired under the Plan. Holders of Allowed Claims in Class 2 are entitled to vote to accept or reject the Plan.

3.  *Class 3* – On or after the Effective Date, and except to the extent that a Holder of an Allowed Secured Tractor Claim agrees to a less favorable treatment, each Holder of an Allowed Secured Tractor Claim – including (a) Daimler Truck Financial, (b) VFS US LLC, (c) Paccar Financial Corp., (d) MHC Financial Services, Inc., (e) People's Capital and Leasing Corp., and (f) BMO Financial – shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Secured Tractor Claim, the following:

    (i)     As relates to any Retained Collateral that is subject to a Pre-Petition Agreement (as defined in the Sale Procedures Order) and that has not been sold or voluntarily surrendered pursuant to the Sale Procedures Order, the Debtors shall, solely as relates to such Retained Collateral, remain bound by and perform in accordance with the Pre-Petition Agreement, including but not limited to making such payments as remain outstanding under the Pre-Petition Agreements in accordance with the terms and conditions of the Pre-Petition Agreements, provided however, that the maturity of such Pre-Petition Agreements shall be extended as set forth in Exhibit A hereto, which additional payments shall be made as cure for any payments previously not made by the Debtors. For the avoidance of doubt, any lien granted in or to Retained Collateral pursuant to a Pre-Petition Agreement shall be retained by and for the benefit of such secured creditor holding an allowed Class 3 Claim. For the further avoidance of doubt, notwithstanding any provision of the Plan otherwise, all guaranty or surety agreements issued by an Exculpated Party or a Released Party in connection with a Pre-Petition Agreement shall continue in full force and effect, but solely as relates to Retained Collateral.

(ii)     As relates to any Tractor that has been sold pursuant to the Sale Procedures Order, (x) a secured claim in the amount the Sale Proceeds, which shall be paid in accordance with the terms of the Sale Procedures Order, and (y) any deficiency claim, which shall be treated as either a Class 8 General Unsecured Claim unless creditor elects to accept a Class 7 Settlement Class Claim.

(iii)    As relates to any Tractor that has been surrendered pursuant to the Sale Procedures Order, (x) the collateral, and (y) any deficiency claim, which shall be treated as a Class 8 General Unsecured Claim unless creditor elects to accept a Class 7 Settlement Class Claim.

(iv)     For purposes of voting and Confirmation, each secured creditor noted above shall be classified in separate subclasses within Class 3 - *i.e.* 3(a); 3(b); 3(c); 3(d), 3(e); and 3(f).

(v)      A schedule of Allowed Secured Tractor Claims is attached to the Plan as Exhibit A.  To the extent a Claim is not listed on Exhibit A, the collateral related to such Claim has been sold or surrendered and any amounts still due shall be treated consistent with subsections (ii) or (iii), above.

Class 3 is Impaired under the Plan.  Holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.  *Class 4* – On or after the Effective Date, and except to the extent that a Holder of an Allowed Secured Trailer Claim agrees to a less favorable treatment, each Holder of an Allowed Secured Trailer Claim – including (a) Signature Financial, (b) 1st Source Bank, (c) Merchants Capital Resources, (d) Scottrade Equipment Finance, (e) Webster Capital Finance, and (f) Dolores State Bank – shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Secured Trailer Claim, the following:

(i)      As relates to any Retained Collateral that is subject to a Pre-Petition Agreement (as defined in the Sale Procedures Order) and that has not been sold or voluntarily surrendered pursuant to the Sale Procedures Order, the Debtors shall, solely as relates to such Retained Collateral, remain bound by and perform in accordance with the Pre-Petition Agreement, including but not limited to making such payments as remain outstanding under the Pre-Petition Agreements in accordance with the terms and conditions of the Pre-Petition Agreements, provided however, that the maturity of such Pre-Petition Agreements shall be extended as set forth in Exhibit B hereto, which additional payments shall be made as cure for any payments previously not made by the Debtors.  For the avoidance of doubt, any lien granted in or to Retained Collateral pursuant to a Pre-Petition Agreement shall be retained by and for the benefit of such secured creditor holding an allowed Class 4 Claim.  For the further avoidance of doubt, notwithstanding any provision of the Plan otherwise, all guaranty or surety agreements issued by an Exculpated Party or a Released Party in connection with a Pre-Petition Agreement shall continue in full force and effect, but solely as relates to Retained Collateral.

(ii)     As relates to any Trailer that has been sold pursuant to the Sale Procedures Order, (x) a secured claim in the amount the Sale Proceeds, which shall be paid in accordance with the terms of the Sale Procedures Order, and (y) any deficiency claim, which shall be treated as either a Class 8 General Unsecured Claim unless creditor elects to accept a Class 7 Settlement Class Claim.

(iii)    As relates to any Trailer that has been surrendered pursuant to the Sale Procedures Order, (x) the collateral, and (y) any deficiency claim, which shall be treated as a Class 8 General Unsecured Claim unless creditor elects to accept a Class 7 Settlement Class Claim or Class 6 Convenience Class Claim.

(iv)     During the Bankruptcy Cases, Scottrade Equipment Finance provided written notice to the Debtors that it had assigned its Claim to TCF Equipment Finance. No notice has been filed pursuant to Bankruptcy Rule 3001(e) and unless filed before Confirmation, such Claim shall remain with Scottrade.

(v)      Dolores State Bank was paid during the Bankruptcy Cases and released its Claim. Accordingly, Dolores State Bank's Claim shall be Allowed at $0.00 and Dolores State Bank shall have no further Claims against the Debtors.

(vi)     For purposes of voting and Confirmation, each secured creditor noted above shall be classified in separate subclasses within Class 4 - *i.e.* 4(a); 4(b); 4(c); 4(d); 4(e); and 4(f).

(vii)    A schedule of Allowed Secured Trailer Claims is attached to the Plan as Exhibit B. To the extent a Claim is not listed on Exhibit B, the collateral related to such Claim has been sold or surrendered and any amounts still due shall be treated consistent with subsections (ii) or (iii), above.

Class 4 is Impaired under the Plan. Holders of Allowed Claims in Class 4 are entitled to vote to accept or reject the Plan.

5.   *Class 5* – On or after the Effective Date, and except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, each Holder of an Allowed Other Secured Claim shall receive, in full and final satisfaction, compromise, release, and discharge of and in exchange for each Other Secured Claim, the following:

(i)      As relates to any Other Collateral that is subject to a Pre-Petition Agreement (as defined in the Sale Procedures Order) and that has not been sold or voluntarily surrendered pursuant to the Sale Procedures Order, the Debtors shall, solely as relates to such Other Collateral, remain bound by and perform in accordance with the Pre-Petition Agreement, including but not limited to making such payments as remain outstanding under the Pre-Petition Agreements in accordance with the terms and conditions of the Pre-Petition Agreements, provided however, that the maturity of such Pre-Petition Agreements shall be extended as set forth in Exhibit C hereto, which additional payments shall be made as cure for any payments previously not made by the Debtors. For the avoidance of doubt, any lien granted

in or to Retained Collateral pursuant to a Pre-Petition Agreement shall be retained by and for the benefit of such secured creditor holding an allowed Class 5 Claim.

(ii)     As relates to any Other Collateral that has been sold pursuant to the Sale Procedures Order, (x) a secured claim in the amount the Sale Proceeds, which shall be paid in accordance with the terms of the Sale Procedures Order, and (y) any deficiency claim, which shall be treated as either a Class 8 General Unsecured Claim unless creditor elects to accept a Class 7 Settlement Class Claim or Class 6 Convenience Class Claim.

(iii)    As relates to any Other Collateral that has been surrendered pursuant to the Sale Procedures Order, (x) the collateral, and (y) any deficiency claim, which shall be treated as a Class 8 General Unsecured Claim unless creditor elects to accept a Class 7 Settlement Class Claim.

(iv)     For purposes of voting and Confirmation, each Other Secured Claim shall be classified in separate subclasses within Class 5 – *i.e.* 5(a); 5(b); 5(c); etc.

(v)      A schedule of all Allowed Other Secured Claims is attached to the Plan as Exhibit C.  To the extent a prepetition secured obligation, other than a Tractor or Trailer Claim, is not listed on Exhibit C, the collateral has been sold or surrendered and any remaining obligations will be treated pursuant to subsections (ii) or (iii), above.

Class 5 is Impaired under the Plan.  Holders of Allowed Claims in Class 5 are entitled to vote to accept or reject the Plan.

6. *Class 6* – On the Effective Date, all Holders of Allowed Claims in an amount less than $5,000.00, and all Holders of Claims who affirmatively elect treatment as a Convenience Class Claim by checking the appropriate box on the Ballot and timely returning it to the Debtors shall receive, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Class 6 Claim, the lesser of (i) $5,000.00 or (ii) if the Claim amount is less than $5,000.00, the full amount of such Claim.

Class 6 is Unimpaired under the Plan.  Holders of Allowed Claims in Class 6 are deemed to accept the Plan and are not entitled to vote to accept or reject the Plan.

7. *Class 7* – On the Effective Date, and except to the extent that a Holder of an Allowed Settlement Class Claim agrees to a less favorable treatment, each Holder of an Allowed Settlement Class Claim shall receive their pro rata share of the Settlement Pool.

To the extent the amount of the Allowed Settlement Class Claims is less than the amount of the Settlement Pool, such Claims will be paid in full.  After receiving their pro rata share of the Settlement Pool, and to the extent the Settlement Class Claim remains unsatisfied, such Holders will receive their pro rata share of the Guaranteed Quarterly Distribution until such time as the Allowed Settlement Class Claims are paid in full and appropriate reserves are established for any such Disputed Claims.

If any portion of the Settlement Pool remains after the Allowed Settlement Class Claims are satisfied and the Disputed Claims Reserve has been established with respect to such Claims, the Reorganized Debtors may, in their sole discretion, use such remaining amounts to make the Guaranteed Quarterly Distribution to Class 8, as provided below.

Class 7 is Impaired under the Plan.  Holders of Allowed Claims in Class 7 are entitled to vote to accept or reject the Plan, *provided, however*, that any creditor opting into Class 7 shall be deemed to accept the Plan.

8.  *Class 8* – After the Allowed Settlement Class Claims have been paid in full, and except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, each Holder of an Allowed General Unsecured Claim shall receive their pro rata share of the Guaranteed Quarterly Distribution until such time as all Allowed General Unsecured Claims are paid in full.

Holders of Allowed General Unsecured Claims shall be subject to the channeling injunction set out in Article VIII.G hereof until such time as all Allowed Claims in Class 8 are paid in full.

Class 8 is Impaired under the Plan.  Holders of Allowed Claims in Class 8 are entitled to vote to accept or reject the Plan.

9.  *Class 9* – On the Effective Date, in exchange for agreeing to work for the Debtors during the Bankruptcy Cases and their continued work for the Reorganized Debtors, Holders of Equity Claims and Interests in the Debtors shall receive their equity in the Debtors.  Class 9 is Unimpaired under the Plan.  Holders of Allowed Claims in Class 9 are deemed to accept the Plan and are not entitled to vote to accept or reject the Plan.

**D.      Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights with respect to any Unimpaired Claims, including, all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

**E.      Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interests temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**F.      Voting Classes, Presumed Acceptance by Non-Voting Classes**

Only Holders of Allowed Claims in Classes 3, 4, 5, 6, 7, and 8 are entitled to vote to accept or reject the Plan.  Holders of Claims in Voting Classes will receive Ballots containing detailed voting instructions.

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

## G.     Intercompany Interests

Any intercompany interest between the Debtors shall be unaffected by the Plan.

## H.     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code

If any Class of Claims entitled to vote on the Plan does not vote to accept the Plan, the Debtors may (i) seek Confirmation of the Plan under Bankruptcy Code section 1129(b) or (ii) amend or modify the Plan in accordance with Article X of the Plan and the provisions of the Bankruptcy Code.

## I.     Controversy Concerning Impairment

If any controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and hearing, determine such controversy on or before the Confirmation Date.

## J.     Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## K.     No Waiver

Nothing contained in the Plan shall be construed to waive the Debtors' or other Person's right to object on any basis to any Claim or Interest.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

## A.     Corporate Existence

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, or other form, as the case may be, with all the powers of a corporation, limited liability company, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and by-laws (or other formation documents) are amended under the

Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, or federal law).

**B.**     **Reorganized Debtors**

On the Effective Date, the Reorganized Debtors shall have the authority to adopt any other agreements, documents, and instruments and to take any other actions contemplated under the Plan as necessary to consummate the Plan.

**C.**     **Sources of Plan Distributions**

Distributions under the Plan, including Guaranteed Quarterly Distributions, shall be made from the Debtors' Cash on hand, including Cash from operations and the R.W. Timms Proceeds, as applicable.

**D.**     **Vesting of Assets in the Reorganized Debtors**

On the Effective Date all property in each Estate, all Retained Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances, except those Liens granted under any agreement, instrument, or other document incorporated in the Plan, or as otherwise provided for in the Plan. On and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Retained Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Failure to describe a Cause of Action under the Plan shall not constitute a waiver or release of such Cause of Action.

**E.**     **Corporate Action**

On the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including (1) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; and (2) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Plan (whether to occur before, on, or after the Effective Date).

All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors, as applicable, in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtors or the Reorganized Debtors, as applicable. On or prior to the Effective Date, the Directors and Officers of the Debtors shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors. The authorizations and approvals contemplated by Article IV of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

**F.      Directors and Officers of the Reorganized Debtors**

On the Effective Date, the Current Directors and Officers of the Debtors shall be established as the Directors and Officers of the Reorganized Debtors.

**G.      Effectuating Documents; Further Transactions**

Except as otherwise provided for in the Plan with respect to Secured Claims arising under the DIP Financing Agreement, on and after the Effective Date, the Reorganized Debtors, and the Directors and Officers, are authorized to and may issue, execute, deliver, File, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorization, or consents, except for those expressly required pursuant to the Plan.

**H.      Retained Causes of Action**

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with Bankruptcy Code section 1123(b)(3), the Reorganized Debtors shall retain and shall have the exclusive right, authority, and discretion to (without further order of the Bankruptcy Court) determine and to initiate, File, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any and all Retained Causes of Action that the Debtors or the Estates may hold against any Entity, whether arising before or after the Petition Date, regardless of whether specifically described in the Schedule of Retained Causes of Action attached as Exhibit 5 to the Disclosure Statement. The Debtors reserve and shall retain the foregoing Retained Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Bankruptcy Cases.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACS AND UNEXPIRED LEASES

**A.      Assumption and Rejection of Executory Contracts and Unexpired Leases**

On the Effective Date, except as otherwise provided in the Plan or Plan Documents, all Executory Contracts or Unexpired Leases that currently exist between the Debtors and another Person or Entity, and are not listed on the Schedule of Rejected Contracts attached as Exhibit D, shall be deemed assumed by the Debtors with a cure amount of zero dollars ($0.00) unless they (i) were previously assumed or rejected by the Debtors; or (2) are subject to a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute an order approving the assumptions or rejections of the Executory Contracts and Unexpired Leases set forth in the Schedule of Rejected Contracts and Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order. Each Executory Contract and Unexpired Lease assumed

pursuant to Article V.A of the Plan or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall re-vest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law. Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Schedules identified in the Plan at any time through and including sixty (60) days after the Effective Date.

**B.**   **Indemnification Obligations**

All indemnification provisions, consistent with applicable law, currently in place (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for the Current Directors and Officer, managers, employees, attorneys, accountants, investment bankers, and other Professionals of the Debtors, as applicable, shall be reinstated and remain intact, irrevocable, and shall survive the Effective Date on terms no less favorable to such Current Directors and Officers, managers, employees, attorneys, accountants, investment bankers, and other Professionals of the Debtors than the indemnification provisions in place prior to the Effective Date.

**C.**   **Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim, with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within 30 days after the later of (1) the date of entry of any order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, (3) the Effective Date, or (4) the date after the Effective Date that the applicable Schedules are altered, amended, modified, or supplemented, but only with respect to any Executory Contract or Unexpired Lease thereby affected. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.C.7 hereof.

**D.**   **Cure of Defaults for Executory Contracts and Unexpired Leases Assumed**

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation

described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. Pursuant to the Disclosure Statement Approval Order, the Debtors shall provide for notices of proposed assumption and proposed cure amounts and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

## E. Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Reorganized Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

## F. Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

## G. Reservation of Rights

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Contracts and Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or

Unexpired Lease or that either of the Reorganized Debtors has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan.

## H.       Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Executory Contracts and Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## I.       Contracts and Leases Entered Into After the Petition Date

Contracts and leases entered into after the Petition Date, if any, including any Executory Contract and Unexpired Leases assumed by either Debtor, will be performed by the applicable Debtor or the Reorganized Debtors liable thereunder in the ordinary course of their business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order.

# ARTICLE VI.
# PROVISIONS GOVERNING DISTRIBUTIONS

## A.       Timing and Calculation of Distributions

As soon as reasonably practicable (as determined by the Debtors) after the Effective Date, the Debtors shall make distributions to Holders of Allowed Administrative Expense Claims (including Allowed Professional Compensation Claims) and Allowed Claims in Classes 2, 3, 4, 5, 6 and 7. Thereafter, the Debtors shall make a Guaranteed Quarterly Distribution to be distributed in accordance with provisions of the Plan. The Debtors shall make additional distributions to Holders of Allowed Claims as and when required by the terms of the Plan. The first Guaranteed Quarterly Distribution shall be delivered on the tenth (10th) day (or first business day thereafter) of the first month that is ninety (90) days after the Effective Date. All subsequent Guaranteed Quarterly Distributions shall be due on the tenth (10th) day (or first business day thereafter) of the month every three (3) months thereafter.

Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest), each Holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests (as applicable) in the applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VI.E of the Plan. Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be

entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

**B.**     **Rights and Powers of the Reorganized Debtors to Make Distributions**

All distributions under the Plan shall be made by the Reorganized Debtors. The Reorganized Debtors shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.

The Reorganized Debtors shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform their duties under the Plan; (b) make all distributions contemplated hereby; and (c) exercise such powers as may be vested in the Reorganized Debtors by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Reorganized Debtors to be necessary and proper to implement the provisions hereof.

**C.**     **Delivery of Distributions and Undeliverable or Unclaimed Distributions**

    1.    *Record Date for Distribution*

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents shall be closed, and the Debtors or their respective agents shall not be required to make any further changes in the record holders of any of the Claims or Interests. The Debtors shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date. The Debtors shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

    2.    *Delivery of Distributions in General*

Except as otherwise provided herein, the Debtors shall make distributions to Holders of Allowed Claims and Allowed Interests (as applicable) as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution: *provided, however*, that the manner of such distributions shall be determined at the discretion of the Reorganized Debtors; *provided further, however*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

    3.    *Minimum Distributions*

To the extent Cash is distributed under the Plan, no Cash payment of less than $50.00 shall be made to a Holder of an Allowed Claim on account of such Allowed Claim, and such amounts shall be retained by the Reorganized Debtors.

4. *Undeliverable Distributions and Unclaimed Property*

In the event that any distribution to any Holder of Allowed Claims or Allowed Interests (as applicable) is returned as undeliverable, no distribution to such Holder shall be made unless and until the Debtors have determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided, however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder of Claims and Interests to such property or Interest in property shall be discharged and forever barred.

## D. Manner of Payment

1. All distributions of Cash to the Holders of Allowed Claims under the Plan shall be made by the Reorganized Debtors on behalf of the applicable Debtor.

2. At the option of the Reorganized Debtors, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

## E. Distributions to Holders of Disputed Claims

1. Distributions on account of Disputed Claims shall be held, Pro Rata, in the Disputed Claims Reserve until such Claims have been either Allowed or Disallowed. To the extent a Disputed Claim becomes Allowed the distribution reserved for such Claim shall be distributed to the Holder thereof. To the extent a Disputed Claim becomes Disallowed, the distribution reserved for such Claim may be distributed to Holders of Allowed Claims via the Guaranteed Quarterly Distribution.

2. For purposes of this section, "Pro Rata" means, as to a particular Holder of a Claim in a particular Class, the ratio that the amount of such Claim held by such Claim Holder bears to the aggregate amount of all Claims in the particular Class, and such ratio shall be calculated as if all Claims in such Class are Allowed Claims as of the Effective Date.

## F. Section 1145 Exemption

Pursuant to section 1145 of the Bankruptcy Code, on and after the Effective Date, the offering, issuance, and distribution of any new equity interests in the Reorganized Debtors shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of securities. In addition, under section 1145 of the Bankruptcy Code, such securities will be freely tradable in the United States by the recipients thereof, subject to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section

2(a)(11) of the Securities Act, and subject to any restrictions in any new organizational documents filed by the Reorganized Debtors.

**G.     Compliance with Tax Requirements**

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.   Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

**H.     Allocations**

Distribution with respect to Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

**I.     No Postpetition Interest on Claims**

Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no Holder of a prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

**J.     Foreign Currency Exchange Rate**

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Petition Date.

**K.     Setoffs and Recoupment**

Except as expressly provided in the Plan, each Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Reorganized Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Reorganized Debtor(s) and Holder of Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court

30

of competent jurisdiction; *provided, however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Reorganized Debtor or its successor of any and all claims, rights, and Causes of Action that such Reorganized Debtor or its successor may possess against the applicable Holder. In no event shall any Holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII.F of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right or recoupment.

## L.     **Claims Paid or Payable by Third Parties**

1.  *Claims Paid by Third Parties*

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Reorganized Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.  *Claims Payable by Third Parties*

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.  *Applicability of Insurance Policies*

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor

shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

**A.**     **Claims Administration Responsibilities**

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors, with respect to all Claims and Interests, shall have the authority to: (1) File, withdraw, or litigate to judgment, objections to Claims or Interests; (2) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. After the Effective Date, both of the Reorganized Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Interests or Claims, other than General Unsecured Claims, immediately prior to the Effective Date.

**B.**     **Estimation of Claims and Interests**

Before or after the Effective Date, the Debtors may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Disputed Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim or Interest that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

**C.**     **Adjustment to Claims or Interests Without Objection**

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtors without any further notice to or action, order, or approval of the Bankruptcy Court.

**D.**     **Time to File Objections to Claims**

Except as otherwise specifically provided in the Plan, any objections to Claims shall be Filed on or before the later of: (i) one hundred eighty (180) days after the Effective Date, or (ii)

such other period of limitation as may be specifically fixed by a Final Order of the Bankruptcy Court for objecting to such Claims.

**E.**      **Disallowance of Claims or Interests**

Except as otherwise specifically provided in the Plan, any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as any objection to those Claims or Interests have been settled or a Bankruptcy Court order with respect thereto has been entered.

Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.

**F.**      **Amendments to Claims or Interests**

On or after the Effective Date, a Claim or Interest may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors and any such new or amended Claim or Interest Filed shall be deemed disallowed in full and expunged without any further action.

**G.**      **No Distributions Pending Allowance**

If any objection to a Claim or Interest or portion thereof is Filed as set forth in Article VII.D hereof, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest or portion thereof unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

**H.**      **Distributions After Allowance**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Debtors shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

### A.    Release of Debtors

Pursuant to Bankruptcy Code section 1141(d), and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided for in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests related to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.   The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

### B.    Release of Liens

Except as otherwise provided in the Plan, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Secured Claims that the Debtors elect to Reinstate in accordance with Article III.C hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns.   On and after the Effective Date, any Holder of such Secured Claim (and the applicable agents for such Holder), at the expense of the Reorganized Debtors, shall be authorized and directed to release any collateral or other property of either Debtor (including any Cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Reorganized Debtors to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases.   The presentation or Filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

## C.     Releases by the Debtors

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Bankruptcy Cases, the Disclosure Statement, the Plan, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Filing of the Bankruptcy Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.   Notwithstanding anything contained herein to the contrary, the foregoing release does not release any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.

## D.     Releases by Holders of Claims and Interests

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, whether known or unknown, including derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Bankruptcy Cases, the formulation, preparation dissemination, negotiation, or Filing of the Disclosure Statement, the Plan, or the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.   Notwithstanding anything contained herein to the contrary, the foregoing release does not release any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.

## E.     Exculpation

The Exculpated Parties shall not have or incur any liability to any Holder of a Claim or Interest, for any act, event, or omission from the Petition Date to the Effective Date in connection with or arising out of the Bankruptcy Cases, the Confirmation of the Plan, the Consummation of the Plan, the administration of the Plan or the assets and property to be distributed pursuant to the Plan (including unclaimed property under the Plan), unless such Entity's action is determined as (i) bad faith; (ii) actual fraud; (iii) willful misconduct; or (iv) gross negligence, in each case by a Final Order of a court of competent jurisdiction.   Each Entity may reasonably rely upon the

opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtors.

## F.     Injunction

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been satisfied, released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Upon Confirmation of the Plan, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.    Each Holder of any Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in the Plan.

## G.     Channeling Injunction

In addition, upon Confirmation of the Plan, all creditors of the Debtors having an Allowed General Unsecured Claim under Class 8 herein shall be temporarily enjoined, pursuant to Section 105 of the Bankruptcy Code, from proceeding against any other obligor or guarantor on that debt for the collection of all or any portion of their Allowed General Unsecured Claim. Such injunction shall remain in effect only for so long as the Reorganized Debtors comply with the terms of the Plan.  Any violation of the Plan that remains uncured for thirty (30) days after receipt by the Reorganized Debtors of written notice from any party affected by such violation shall, without order of the Bankruptcy Court, automatically result in the dissolution of the injunction granted hereunder as to the affected party.

**H.      Protections Against Discriminatory Treatment**

      Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Bankruptcy Cases (or during the Bankruptcy Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Bankruptcy Cases.

**I.      Reimbursement or Contribution**

      If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim is no longer contingent.

<h2 style="text-align:center">ARTICLE IX.<br>CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN</h2>

**A.      Conditions Precedent to Confirmation**

      The following are conditions precedent to Confirmation of the Plan that shall be satisfied or waived in writing in accordance with Article IX.C of the Plan:

1.  The Court shall have approved a Disclosure Statement with respect to the Plan in form and substance acceptable to the Debtors; and

2.  The Plan and Confirmation Order shall be in form and substance acceptable to the Debtors.

**B.      Conditions Precedent to Effectiveness**

1.  The Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Debtors and shall not (a) have been reversed or vacated, (b) be subject to a then-effective stay, or (c) have been modified or amended;

2.  The Plan, including any amendments, modifications, or supplements thereto, and inclusive of any amendments, modifications, or supplements made after the Confirmation Date but before the Effective Date, shall be in form and substance acceptable to the Debtors; and

3.  The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan.

**C.      Waiver of Conditions**

The conditions to Confirmation and the Effective Date set forth in this Article IX may be waived only with the prior written consent of the Debtors without notice, leave, or order of the Court or any formal action other than proceedings to confirm or consummate the Plan.

**D.      Effect of Failure of Conditions**

If Consummation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of Claims by the Debtors, Claims, or Interests; (2) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgement, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity.

**ARTICLE X.**
**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

**A.      Modifications and Amendments**

Except as otherwise specifically provided in the Plan, the Debtors reserve the right to modify the Plan whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan. Subject to those restrictions on modifications set forth in the Plan and the requirements of section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, both of the Debtors expressly reserve their respective rights to revoke or withdraw, or, to alter, amend, or modify the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

**B.      Effect of Confirmation on Modifications**

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the Solicitation thereof are approved pursuant to Bankruptcy Code section 1127(a) and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**C.      Revocation or Withdrawal of Plan**

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or

limiting to an amount certain of any Claim or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts and Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or relating to, the Bankruptcy Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any requests for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2. Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3. Resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which either Debtor is party or with respect to which either Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V hereof, the Schedules of Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4. Ensure that distributions to Holders of Allowed Claims and Allowed Interests (as applicable) are accomplished pursuant to the provisions of the Plan;

5. Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving either Debtor that may be pending on the Effective Date;

6. Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.  Enter and implement such orders as may be necessary to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.  Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.  Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary to restrain interference by any Entity with Consummation or enforcement of the Plan;

11. Resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII hereof and enter such orders as may be necessary to implement such releases, injunctions and other provisions;

12. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.L hereof;

13. Enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15. Enter an order concluding or closing the Bankruptcy Cases;

16. Adjudicate any and all disputes arising from or relating to distributions under the Plan;

17. Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Court order, including the Confirmation Order;

18. Determine requests for the payment of Claims and Interest entitled to priority pursuant to section 507 of the Bankruptcy Code;

19. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 363, 505, and 1146 of the Bankruptcy Code;

21. Hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and releases granted in the Plan, including under Article VIII hereof, regardless of whether such termination occurred prior to or after the Effective Date;

22. Enforce all orders previously entered by the Court; and

23. Hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

### A.      **Immediate Binding Effect**

Subject to Article IX hereof, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

### B.      **Additional Documents**

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### C.      **Payment of Statutory Fees**

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by each of the Reorganized Debtors for each quarter (including any fraction thereof) until the Bankruptcy Cases are converted, dismissed, or closed - whichever occurs first.

**D.**     **Reservation of Rights**

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of an action by any Debtor with respect to the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of any rights of either Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

**E.**     **Successors & Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**F.**     **Notices**

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including any facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

OKIN ADAMS LLP
Matthew S. Okin
David L. Curry, Jr.
1113 Vine St., Suite 201
Houston, Texas 77002
Tel: 713.228.4100
Fax: 888.865.2118
mokin@okinadams.com
dcurry@okinadams.com

**G.**     **Term of Injunctions or Stays**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Bankruptcy Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.    **Entire Agreement**

Except as otherwise indicated, the Plan (including, for the avoidance of doubt, the Plan Documents) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.    **Exhibits**

All Exhibits and documents attached to the Disclosure Statement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the Exhibits and documents are Filed, copies of such Exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such Exhibits and documents from the Courts CM/ECF filing system.  To the extent any Exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

J.    **Nonseverability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; (3) nonseverable and mutually dependent.

K.    **Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the Solicitation of votes on the Plan.

**L.**       <u>Closing the Bankruptcy Cases</u>

The Reorganized Debtors shall, promptly after the administration of the Bankruptcy Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Bankruptcy Cases.

**M.**      <u>Waiver or Estoppel</u>

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any arguments, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors, or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

**N.**      <u>Controlling Document</u>

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

# EXHIBIT A

**Notes & Leases**
**Daimler Truck Financial**

| Contract # | Tractor Number | Year | Make | Serial Number | Purchase Date | Note or Lease Holder | Pmt. Amount | Original Maturity Date | Plan Maturity Date |
|---|---|---|---|---|---|---|---|---|---|
| 5000008332001 | 594 | 2015 | FREIGHTLINER | 3AKGGLD58FSGJ8806 | 08/29/2014 | Armada | $4,750.41 | 9/10/2017 | 11/10/2018 |
| Lease | 595 | 2015 | FREIGHTLINER | 3AKGGLD54FSGJ8804 | 08/29/2014 | Armada | | 9/10/2017 | 11/10/2018 |
| 5000010800001 | 601 | 2015 | FREIGHTLINER | 3AKGGLD51FSGJ8811 | 10/09/2014 | Armada | $2,375.21 | 10/8/2017 | 12/8/2018 |
| Lease | | | | | | | | | |
| 5000013664001 | 602 | 2015 | FREIGHTLINER | 3AKGGLD53FSGJ8812 | 10/29/2014 | Armada | $4,750.41 | 11/12/2017 | 1/12/2019 |
| Lease | 603 | 2015 | FREIGHTLINER | 3AKGGLD55FSGJ8813 | 10/29/2014 | Armada | | 11/12/2017 | 1/12/2019 |
| 5000016709001 | 606 | 2015 | FREIGHTLINER | 3AKGGLD50FSGJ8816 | 12/23/2014 | Armada | $2,227.63 | 1/6/2021 | 3/6/2021 |
| Finance | | | | | | | | | |
| 5000020387001 | 609 | 2015 | FREIGHTLINER | 3AKGGLD56FSGJ8819 | 02/11/2015 | Armada | $6,687.13 | 2/28/2021 | 4/28/2021 |
| Finance | 611 | 2015 | FREIGHTLINER | 3AKGGLD54FSGJ8821 | 02/11/2015 | Armada | | 2/28/2021 | 4/28/2021 |
| | 614 | 2015 | FREIGHTLINER | 3AKGGLD5XFSGJ8824 | 02/11/2015 | Armada | | 2/28/2021 | 4/28/2021 |
| 5000018388001 | 613 | 2015 | FREIGHTLINER | 3AKGGLD58FSGJ8823 | 01/15/2015 | Armada | $6,667.89 | 1/14/2021 | 3/14/2021 |
| Finance | 615 | 2015 | FREIGHTLINER | 3AKGGLD51FSGJ8825 | 01/15/2015 | Armada | | 1/14/2021 | 3/14/2021 |
| | 616 | 2015 | FREIGHTLINER | 3AKGGLD53FSGJ8826 | 01/15/2015 | Armada | | 1/14/2021 | 3/14/2021 |
| 5000049086001 | 722 | 2016 | FREIGHTLINER | 3AKJGLD50GSGN4142 | 02/15/2016 | Armada | $6,874.62 | 2/17/2022 | 4/17/2022 |
| Finance | 723 | 2016 | FREIGHTLINER | 3AKJGLD5XGSGN4150 | 02/02/2016 | Armada | | 2/17/2022 | 4/17/2022 |
| | 724 | 2016 | FREIGHTLINER | 3AKJGLD51GSGN4151 | 03/04/2016 | Armada | | 2/17/2022 | 4/17/2022 |
| 5000051974001 | 725 | 2016 | FREIGHTLINER | 3AKJGLD56GSGN4095 | 03/24/2016 | Armada | $6,749.83 | 3/27/2022 | 5/27/2022 |
| Finance | 727 | 2016 | FREIGHTLINER | 3AKJGLD54GSGN4127 | 03/24/2016 | Armada | | 3/27/2022 | 5/27/2022 |
| | 728 | 2016 | FREIGHTLINER | 3AKJGLD59GSGN4110 | 03/24/2016 | Armada | | 3/27/2022 | 5/27/2022 |

Notes & Leases
Paccar Financial Corp.

| Contract # | Tractor Number | Year | Make | Serial Number | Purchase Date | Note or Lease Holder | Pmt. Amount | Original Maturity Date | Plan Maturity Date |
|---|---|---|---|---|---|---|---|---|---|
| 900-693-600-00006305007 | 549 | 2014 | PETERBILT | 1XPBD49X7ED251357 | 12/27/2013 | Armada | $23,074.48 | 3/1/2018 | 3/1/2018 |
| Lease | 550 | 2014 | PETERBILT | 1XPBD49X9ED251358 | 12/27/2013 | Armada | | 3/1/2018 | 3/1/2018 |
| | 551 | 2014 | PETERBILT | 1XPBD49X0ED251359 | 12/27/2013 | Armada | | 3/1/2018 | 3/1/2018 |
| | 552 | 2014 | PETERBILT | 1XPBD49X7ED251360 | 12/27/2013 | Armada | | 3/1/2018 | 3/1/2018 |
| | 553 | 2014 | PETERBILT | 1XPBD49X9ED251361 | 12/27/2013 | Armada | | 3/1/2018 | 3/1/2018 |
| | 554 | 2014 | PETERBILT | 1XPBD49X0ED251362 | 12/27/2013 | Armada | | 3/1/2018 | 3/1/2018 |
| | 555 | 2014 | PETERBILT | 1XPBD49X2ED251363 | 12/27/2013 | Armada | | 3/1/2018 | 3/1/2018 |
| | 556 | 2014 | PETERBILT | 1XPBD49X4ED251364 | 12/27/2013 | Armada | | 3/1/2018 | 3/1/2018 |
| | 557 | 2014 | PETERBILT | 1XPBD49X6ED251365 | 12/27/2013 | Armada | | 3/1/2018 | 3/1/2018 |
| | 558 | 2014 | PETERBILT | 1XPBD49X8ED251366 | 12/27/2013 | Armada | | 3/1/2018 | 3/1/2018 |
| | 559 | 2014 | PETERBILT | 1XPBD49X8ED251531 | 12/27/2013 | Armada | | 3/1/2018 | 3/1/2018 |
| 900-693-600-00006313506 | 560 | 2015 | KENWORTH | 1XKYAP9X5FJ425682 | 2/25/2014 | HCT | $16,000.00 | 6/1/2018 | 7/1/2018 |
| Lease | 561 | 2015 | KENWORTH | 1XKYAP9X7FJ425683 | 2/25/2014 | HCT | | 6/1/2018 | 7/1/2018 |
| | 562 | 2015 | KENWORTH | 1XKYAP9X9FJ425684 | 2/25/2014 | HCT | | 6/1/2018 | 7/1/2018 |
| | 564 | 2015 | KENWORTH | 1XKYAP9X2FJ425686 | 2/25/2014 | HCT | | 6/1/2018 | 7/1/2018 |
| | 565 | 2015 | KENWORTH | 1XKYAP9X4FJ425687 | 2/25/2014 | HCT | | 6/1/2018 | 7/1/2018 |
| | 566 | 2015 | KENWORTH | 1XKYAP9X6FJ425688 | 2/25/2014 | HCT | | 6/1/2018 | 7/1/2018 |
| | 567 | 2015 | KENWORTH | 1XKYAP9X8FJ425689 | 2/25/2014 | HCT | | 6/1/2018 | 7/1/2018 |
| | 568 | 2015 | KENWORTH | 1XKYAP9X4FJ425690 | 2/25/2014 | HCT | | 6/1/2018 | 7/1/2018 |
| 900-693-600-00006603328 | 618 | 2015 | KENWORTH | 1XKYAP9X6FJ450669 | 9/3/2014 | HCT | $10,000.00 | 11/4/2018 | 12/4/2018 |
| Lease | 619 | 2015 | KENWORTH | 1XKYAP9X2FJ450670 | 9/3/2014 | HCT | | 11/4/2018 | 12/4/2018 |
| | 620 | 2015 | KENWORTH | 1XKYAP9X4FJ450671 | 9/3/2014 | HCT | | 11/4/2018 | 12/4/2018 |
| | 621 | 2015 | KENWORTH | 1XKYAP9X6FJ450672 | 9/3/2014 | HCT | | 11/4/2018 | 12/4/2018 |
| | 622 | 2015 | KENWORTH | 1XKYAP9X8FJ450673 | 9/3/2014 | HCT | | 11/4/2018 | 12/4/2018 |
| 900-693-600-00006617989 | 623 | 2015 | KENWORTH | 1XKYAP9X7FJ454228 | 12/10/2014 | HCT | $30,000.00 | 2/10/2019 | 3/10/2019 |
| Lease | 624 | 2015 | KENWORTH | 1XKYAP9X9FJ454229 | 12/10/2014 | HCT | | 2/10/2019 | 3/10/2019 |
| | 625 | 2015 | KENWORTH | 1XKYAP9X5FJ454230 | 12/10/2014 | HCT | | 2/10/2019 | 3/10/2019 |
| | 626 | 2015 | KENWORTH | 1XKYAP9X7FJ454231 | 12/10/2014 | HCT | | 2/10/2019 | 3/10/2019 |
| | 627 | 2015 | KENWORTH | 1XKYAP9X9FJ454232 | 12/10/2014 | HCT | | 2/10/2019 | 3/10/2019 |
| | 628 | 2015 | KENWORTH | 1XKYAP9X0FJ454233 | 12/10/2014 | HCT | | 2/10/2019 | 3/10/2019 |
| | 629 | 2015 | KENWORTH | 1XKYAP9X2FJ454234 | 12/10/2014 | HCT | | 2/10/2019 | 3/10/2019 |
| | 630 | 2015 | KENWORTH | 1XKYAP9X4FJ454235 | 12/10/2014 | HCT | | 2/10/2019 | 3/10/2019 |
| | 631 | 2015 | KENWORTH | 1XKYAP9X6FJ454236 | 12/10/2014 | HCT | | 2/10/2019 | 3/10/2019 |
| | 632 | 2015 | KENWORTH | 1XKYAP9X8FJ454237 | 12/10/2014 | HCT | | 2/10/2019 | 3/10/2019 |
| | 633 | 2015 | KENWORTH | 1XKYAP9XXFJ454238 | 12/10/2014 | HCT | | 2/10/2019 | 3/10/2019 |
| | 634 | 2015 | KENWORTH | 1XKYAP9X1FJ454239 | 12/10/2014 | HCT | | 2/10/2019 | 3/10/2019 |
| | 635 | 2015 | KENWORTH | 1XKYAP9X8FJ454240 | 12/10/2014 | HCT | | 2/10/2019 | 3/10/2019 |
| | 636 | 2015 | KENWORTH | 1XKYAP9XXFJ454241 | 12/10/2014 | HCT | | 2/10/2019 | 3/10/2019 |
| | 637 | 2015 | KENWORTH | 1XKYAP9X1FJ454242 | 12/10/2014 | HCT | | 2/10/2019 | 3/10/2019 |
| 100-693-150-00046622486 | 638 | 2015 | KENWORTH | 1XKYAP9X3FJ454243 | 12/31/2014 | Armada | $14,000.00 | 3/1/2019 | 4/1/2019 |
| Finance | 639 | 2015 | KENWORTH | 1XKYAP9X5FJ454244 | 12/31/2014 | Armada | | 3/1/2019 | 4/1/2019 |
| | 640 | 2015 | KENWORTH | 1XKYAP9X7FJ454245 | 12/31/2014 | Armada | | 3/1/2019 | 4/1/2019 |
| | 641 | 2015 | KENWORTH | 1XKYAP9X9FJ454246 | 12/31/2014 | Armada | | 3/1/2019 | 4/1/2019 |
| | 642 | 2015 | KENWORTH | 1XKYAP9X0FJ454247 | 12/31/2014 | Armada | | 3/1/2019 | 4/1/2019 |
| | 643 | 2015 | KENWORTH | 1XKYAP9X2FJ454248 | 12/31/2014 | Armada | | 3/1/2019 | 4/1/2019 |
| | 644 | 2015 | KENWORTH | 1XKYAP9X4FJ454249 | 12/31/2014 | Armada | | 3/1/2019 | 4/1/2019 |
| 100-693-150-00046622502 | 645 | 2015 | KENWORTH | 1XKYAP9X0FJ454250 | 12/31/2014 | HCT | $16,000.00 | 3/1/2019 | 4/1/2019 |
| Finance | 646 | 2015 | KENWORTH | 1XKYAP9X2FJ454251 | 12/31/2014 | HCT | | 3/1/2019 | 4/1/2019 |
| | 647 | 2015 | KENWORTH | 1XKYAP9X4FJ454252 | 12/31/2014 | HCT | | 3/1/2019 | 4/1/2019 |
| | 648 | 2015 | KENWORTH | 1XKAYP9X6FJ454253 | 12/31/2014 | HCT | | 3/1/2019 | 4/1/2019 |
| | 649 | 2015 | KENWORTH | 1XKYAP9X8FJ454254 | 12/31/2014 | HCT | | 3/1/2019 | 4/1/2019 |
| | 650 | 2015 | KENWORTH | 1XKYAP9XXFJ454255 | 12/31/2014 | HCT | | 3/1/2019 | 4/1/2019 |
| | 651 | 2015 | KENWORTH | 1XKYAP9X1FJ454256 | 12/31/2014 | HCT | | 3/1/2019 | 4/1/2019 |
| | 652 | 2015 | KENWORTH | 1XKYAP9X3FJ454257 | 12/31/2014 | HCT | | 3/1/2019 | 4/1/2019 |
| 100-651-150-00006683221 | 706 | 2016 | PETERBILT | 1XPBAP9X6GD355853 | 10/9/2015 | Armada | $22,263.03 | 12/24/2021 | 1/24/2022 |
| Finance | 707 | 2016 | PETERBILT | 1XPBAP9X8GD355854 | 10/9/2015 | Armada | | 12/24/2021 | 1/24/2022 |
| | 708 | 2016 | PETERBILT | 1XPBAP9XXGD355855 | 10/9/2015 | Armada | | 12/24/2021 | 1/24/2022 |
| | 709 | 2016 | PETERBILT | 1XPBAP9X1GD355856 | 10/9/2015 | Armada | | 12/24/2021 | 1/24/2022 |
| | 710 | 2016 | PETERBILT | 1XPBAP9X3GD355857 | 10/9/2015 | Armada | | 12/24/2021 | 1/24/2022 |
| | 711 | 2016 | PETERBILT | 1XPBAP9X5GD355858 | 10/9/2015 | Armada | | 12/24/2021 | 1/24/2022 |
| | 712 | 2016 | PETERBILT | 1XPBAP9X7GD355859 | 10/9/2015 | Armada | | 12/24/2021 | 1/24/2022 |
| | 713 | 2016 | PETERBILT | 1XPBAP9X3GD355860 | 10/9/2015 | Armada | | 12/24/2021 | 1/24/2022 |
| | 714 | 2016 | PETERBILT | 1XPBAP9X5GD355861 | 10/9/2015 | Armada | | 12/24/2021 | 1/24/2022 |
| | 715 | 2016 | PETERBILT | 1XPBAP9X7GD355862 | 10/9/2015 | Armada | | 12/24/2021 | 1/24/2022 |
| 100-651-150-00006734560 | 729 | 2017 | PETERBILT | 1XPBAP9X5HD420872 | 6/3/2016 | Armada | $1,909.85 | 8/15/2022 | 9/15/2022 |
| Finance | | | | | | | | | |

**Notes & Leases**
**MHC Financial Services**

| Contract # | Tractor Number | Year | Make | Model | Serial Number | Purchase Date | Note or Lease Holder | Pmt. Amount | Original Maturity Date | Plan Maturity Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 124523-2 Finance | 654 | 2016 | KENWORTH | T680 | 1XKYAP8X4GJ465092 | 02/25/2015 | Armada | $2,177.27 | 5/1/2021 | 6/1/2021 |
| 124612-3 Finance | 656 | 2016 | KENWORTH | T680 | 1XKYAP8X8GJ465094 | 03/30/2015 | Armada | $2,165.91 | 6/1/2021 | 7/1/2021 |
| 124755-0 Finance | 662 | 2016 | KENWORTH | T680 | 1XKYAP8XXGJ465100 | 05/05/2015 | Armada | $4,342.36 | 7/5/2021 | 8/5/2021 |
|  | 664 | 2016 | KENWORTH | T680 | 1XKYAP8X3GJ465102 | 05/05/2015 | Armada |  |  | 8/5/2021 |
| 124987-9 Finance | 668 | 2016 | KENWORTH | T680 | 1XKYAP8X9GJ465105 | 06/29/2015 | Armada | $2,179.61 | 9/1/2021 | 10/1/2021 |
| 125422-6 Finance | 716 | 2016 | KENWORTH | T680 | 1XKYAP8X8GJ119708 | 10/16/2015 | Armada | $2,242.29 | 12/16/2021 | 1/16/2022 |
| 125704-7 Finance | 717 | 2016 | KENWORTH | T680 | 1XKYAP8XXGJ119709 | 2/10/2016 | Armada | $11,163.71 | 4/10/2022 | 5/10/2022 |
|  | 718 | 2016 | KENWORTH | T680 | 1XKYAP8X6GJ119710 | 2/10/2016 | Armada |  |  | 5/10/2022 |
|  | 719 | 2016 | KENWORTH | T680 | 1XKYAP8X8GJ119711 | 2/10/2016 | Armada |  |  | 5/10/2022 |
|  | 720 | 2016 | KENWORTH | T680 | 1XKYAP8XXGJ119712 | 2/10/2016 | Armada |  |  | 5/10/2022 |
|  | 721 | 2016 | KENWORTH | T680 | 1XKYAP8X1GJ119713 | 2/10/2016 | Armada |  |  | 5/10/2022 |

**Notes & Leases**
**Volvo Financial Services & VFS Leasing Co.**

| Contract # | Tractor Number | Year | Make | Model | Serial Number | Purchase Date | Note or Lease Holder | Pmt. Amount | Original Maturity Date | Plan Maturity Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 500-7634209-005 | 684 | 2016 | VOLVO | VNL62T730 | 4V4N99EH8GN936528 | 4/18/2015 | Armada | $6,625.17 | 6/3/2021 | 7/3/2021 |
| Finance | 685 | 2016 | VOLVO | VNL62T730 | 4V4N99EHXGN936529 | 4/18/2015 | Armada | | | 7/3/2021 |
| | 688 | 2016 | VOLVO | VNL62T730 | 4V4N99EHXGN936532 | 4/18/2015 | Armada | | | 7/3/2021 |
| 500-7634209-006 | 679 | 2016 | VOLVO | VNL62T730 | 4V4N99EH9GN936523 | 4/29/2015 | Armada | $4,415.40 | 7/13/2021 | 8/13/2021 |
| Finance | 690 | 2016 | VOLVO | VNL62T730 | 4V4N99EH3GN936534 | 4/29/2015 | Armada | | | 8/13/2021 |
| 500-7634209-007 | 681 | 2016 | VOLVO | VNL62T730 | 4V4N99EH2GN936525 | 5/29/2015 | Armada | $ 17,657.52 | 8/9/2021 | 9/9/2021 |
| Finance | 687 | 2016 | VOLVO | VNL62T730 | 4V4N99EH8GN936531 | 5/29/2015 | Armada | | | 9/9/2021 |
| | 689 | 2016 | VOLVO | VNL62T730 | 4V4N99EH1GN936533 | 5/29/2015 | Armada | | | 9/9/2021 |
| | 694 | 2016 | VOLVO | VNL62T730 | 4V4N99EH0GN936538 | 5/29/2015 | Armada | | | 9/9/2021 |
| | 695 | 2016 | VOLVO | VNL62T730 | 4V4N99EH2GN936539 | 5/29/2015 | Armada | | | 9/9/2021 |
| | 699 | 2016 | VOLVO | VNL62T730 | 4V4N99EH4GN936543 | 5/29/2015 | Armada | | | 9/9/2021 |
| | 700 | 2016 | VOLVO | VNL62T730 | 4V4N99EH6GN936544 | 5/29/2015 | Armada | | | 9/9/2021 |
| | 702 | 2016 | VOLVO | VNL62T730 | 4V4N99EHXGN936546 | 5/29/2015 | Armada | | | 9/9/2021 |

**Notes & Leases**
**People's Capital & Leasing**

| Contract # | Tractor Number | Year | Make | Serial Number | Purchase Date | Note or Lease Holder | Pmt. Amount | Original Maturity Date | Plan Maturity Date |
|---|---|---|---|---|---|---|---|---|---|
| 3938-001 | 669 | 2016 | KENWORTH | 1XKYAP8X0GJ465106 | 7/30/2015 | Armada | $11,041.84 | 7/30/2021 | 8/30/2021 |
| Finance | 670 | 2016 | KENWORTH | 1XKYAP8X2GJ465107 | 7/30/2015 | Armada | | 7/30/2021 | 8/30/2021 |
| | 671 | 2016 | KENWORTH | 1XKYAP8X4GJ465108 | 7/30/2015 | Armada | | 7/30/2021 | 8/30/2021 |
| | 672 | 2016 | KENWORTH | 1XKYAP8X6GJ465109 | 7/30/2015 | Armada | | 7/30/2021 | 8/30/2021 |
| | 673 | 2016 | KENWORTH | 1XKYAP8X2GJ465110 | 7/30/2015 | Armada | | 7/30/2021 | 8/30/2021 |
| 3938-002 Finance | 705 | 2016 | FREIGHTLINER | 3AKJGLD55GSGY3880 | 09/04/2015 | Armada | $2,608.87 | 9/11/2020 | 10/11/2020 |

# EXHIBIT B

**SCHEDULE OF ALLOWED SECURED TRAILER CLAIMS**

**Notes & Leases**
**Signature Financial**

| Contract # | Trailer Number | Year | Make | Serial Number | Purchase Date | Note or Lease Holder | Pmt. Amount | Original Maturity Date | Plan Maturity Date |
|---|---|---|---|---|---|---|---|---|---|
| 10545004 | 473H | 2014 | CORNHUSKER | 1T92C4225E0007615 | 2/22/2014 | HCT | $ 5,296.63 | 5/1/2018 | 6/1/2018 |
| Lease | 474H | 2014 | CORNHUSKER | 1T92C4227E0007616 | 2/22/2014 | HCT | | | |
| | 475H | 2014 | CORNHUSKER | 1T92C4229E0007617 | 2/22/2014 | HCT | | | |
| | 476H | 2014 | CORNHUSKER | 1T92C4220E0007618 | 2/22/2014 | HCT | | | |
| | 477H | 2014 | CORNHUSKER | 1T92C4222E0007619 | 2/22/2014 | HCT | | | |
| 105450005 | 478H | 2015 | WILSON | 1W14422A1F2264791 | 4/20/2014 | HCT | $ 5,266.76 | 6/20/2018 | 7/20/2018 |
| Lease | 479H | 2015 | WILSON | 1W14422A3F2264792 | 4/20/2014 | HCT | | | |
| | 480H | 2015 | WILSON | 1W14422A5F2264793 | 4/20/2014 | HCT | | | |
| | 481H | 2015 | WILSON | 1W14422A7F2264794 | 4/20/2014 | HCT | | | |
| | 482H | 2015 | WILSON | 1W14422A9F2264795 | 4/20/2014 | HCT | | | |

**Notes & Leases**
**1st Source Bank**

| Contract # | Trailer Number | Year | Make | Serial Number | Purchase Date | Note or Lease Holder | Pmt. Amount | Original Maturity Date | Plan Maturity Date |
|---|---|---|---|---|---|---|---|---|---|
| 10010875 | 483H | 2015 | WILSON | 1W14422A2F2264993 | 6/5/2014 | HCT | $ 6,347.57 | 6/5/2020 | 7/5/2020 |
| 10010876 | 484H | 2015 | WILSON | 1W14422A4F2264994 | 6/5/2014 | HCT | | | |
| 10010877 | 485H | 2015 | WILSON | 1W14422A6F2264995 | 6/5/2014 | HCT | | | |
| 10010878 | 486H | 2015 | WILSON | 1W14422A8F2264996 | 6/5/2014 | HCT | | | |
| 10010879 | 487H | 2015 | WILSON | 1W14422AXF2264997 | 6/5/2014 | HCT | | | |
| 10010880 | 488H | 2015 | WILSON | 1W14422A1F2264998 | 6/5/2014 | HCT | | | |
| 10010881 | 489H | 2015 | WILSON | 1W14422A3F2264999 | 6/5/2014 | HCT | | | |
| 10010882 | 490H | 2015 | WILSON | 1W14422A4F2265000 | 6/5/2014 | HCT | | | |
| 10010883 | 491H | 2015 | WILSON | 1W14422A6F2265001 | 6/5/2014 | HCT | | | |
| 10010884 | 492H | 2015 | WILSON | 1W14422A8F2265002 | 6/5/2014 | HCT | | | |
| 10010885 | 493H | 2015 | WILSON | 1W14422AXF2265003 | 6/5/2014 | HCT | | | |
| 10010886 | 494H | 2015 | WILSON | 1W14422A1F2265004 | 6/5/2014 | HCT | | | |
| 10010887 | 495H | 2015 | WILSON | 1W14422A3F2265005 | 6/5/2014 | HCT | | | |
| 10010888 | 496H | 2015 | WILSON | 1W14422A5F2265006 | 6/5/2014 | HCT | | | |
| 10010889 | 497H | 2015 | WILSON | 1W14422A7F2265007 | 6/5/2014 | HCT | | | |
| 10011140 | 520H | 2015 | WILSON | 4WW4422A8F7709782 | 12/3/2014 | HCT | $ 1,972.77 | 1/5/2020 | 2/5/2020 |
| 10011141 | 521H | 2015 | WILSON | 4WW4422AXF7709783 | 12/3/2014 | HCT | | | |
| 10011142 | 522H | 2015 | WILSON | 4WW4422A1F7709784 | 12/3/2014 | HCT | | | |
| UNKNOWN | 15005 | 2015 | GREAT DANE | 1GRAP0624FT595828 | 2/27/2014 | HCT | $ 460.80 | 3/27/2019 | 4/27/2019 |

**Notes & Leases**
**Merchants Capital**

| Contract # | Trailer Number | Year | Make | Serial Number | Purchase Date | Note or Lease Holder | Pmt. Amount | Original Maturity Date | Plan Maturity Date |
|---|---|---|---|---|---|---|---|---|---|
| 102542001 | 498H | 2015 | CORNHUSKER | 1T92C4221F0007693 | 6/20/2014 | HCT | $ 12,665.53 | 8/20/2018 | 9/20/2018 |
| Lease | 499H | 2015 | CORNHUSKER | 1T92C4223F0007694 | 6/20/2014 | HCT | | | |
| | 500H | 2015 | CORNHUSKER | 1T92C4225F0007695 | 6/20/2014 | HCT | | | |
| | 501H | 2015 | CORNHUSKER | 1T92C4227F0007696 | 6/20/2014 | HCT | | | |
| | 502H | 2015 | CORNHUSKER | 1T92C4229F0007697 | 6/20/2014 | HCT | | | |
| | 503H | 2015 | CORNHUSKER | 1T92C4220F0007698 | 6/20/2014 | HCT | | | |
| | 504H | 2015 | CORNHUSKER | 1T92C4222F0007699 | 6/20/2014 | HCT | | | |
| | 505H | 2015 | CORNHUSKER | 1T92C4225F0007700 | 6/20/2014 | HCT | | | |
| | 506H | 2015 | CORNHUSKER | 1T92C4227F0007701 | 6/20/2014 | HCT | | | |
| | 507H | 2015 | CORNHUSKER | 1T92C4229F0007702 | 6/20/2014 | HCT | | | |
| | 508H | 2015 | CORNHUSKER | 1T92C4220F0007703 | 6/20/2014 | HCT | | | |
| | 509H | 2015 | CORNHUSKER | 1T92C4222F0007704 | 6/20/2014 | HCT | | | |

**Notes & Leases**
**TCF Equipment Finance**

| Contract # | Trailer Number | Year | Make | Serial Number | Purchase Date | Note or Lease Holder | Pmt. Amount | Original Maturity Date | Plan Maturity Date |
|---|---|---|---|---|---|---|---|---|---|
| 8029052-001 | 523H | 2016 | WILSON | 4WW4422A2G7710833 | 5/21/2015 | HCT | $ 1,795.00 | 7/1/2020 | 8/1/2020 |
| Lease | 524H | 2016 | WILSON | 4WW4422A4G7710834 | 5/21/2015 | HCT | | | |
| | 525H | 2016 | WILSON | 4WW4422A6G7710835 | 5/21/2015 | HCT | | | |
| 8032522-001 | 526H | 2016 | WILSON | 4WW4422A8G7710836 | 5/21/2015 | HCT | $ 5,926.87 | 7/1/2020 | 8/1/2020 |
| Lease | 527H | 2016 | WILSON | 4WW4422AXG7710837 | 5/21/2015 | HCT | | | |
| | 528H | 2016 | WILSON | 4WW4422A1G7710838 | 5/21/2015 | HCT | | | |
| | 529H | 2016 | WILSON | 4WW4422A9G7710943 | 5/21/2015 | HCT | | | |
| | 530H | 2016 | WILSON | 4WW4422A0G7710944 | 5/21/2015 | HCT | | | |
| | 531H | 2016 | WILSON | 4WW4422A2G7710945 | 5/21/2015 | HCT | | | |

# EXHIBIT C

**SCHEDULE OF ALLOWED OTHER SECURED CLAIMS**

| Contract # | Claimant | Collateral | Pmt. Amount | Original Maturity Date | New Maturity Date |
|---|---|---|---|---|---|
| 136872-001 | Lease Corporation of America | 10 Gen-2 APU Systems | $ 2,975.10 | 10/10/2018 | 10/10/2018 |
| 014-1133952-301, 302, 303 | Financial Pacific Leasing | 9 Gen-2 APU Systems | $ 5,190.00 | 10/1/18, 11/1/18, 1/1/19 | 10/1/18, 11/1/18, 1/1/19 |
| Unknown | m2 Lease Funds LLC | 4 Gen-2 APU Systems | $ 1,059.77 | 6/13/2019 | 6/13/2019 |
| 11427513025801 | Chase Auto Finance | 2015 Chevy Silverado VIN 116563 | $ 900.96 | 10/1/2019 | 10/1/2019 |
| 50043654 | Ford Credit | 2014 Ford F350 VIN 70110 | $ 913.73 | 4/5/2019 | 4/5/2019 |

# EXHIBIT D

**SHEDULE OF REJECTED CONTRACTS**

| | Account | Monthly Payment | Term | Expires | Comments |
|---|---|---|---|---|---|
| Birch Communications | 717020 | $ 550.61 | 24 | 12/18 | efax and high speed internet at Midlothian. |
| XO Communications | 4000000375983 | $ 1,400.00 | 36 | 9/18 | Main High Speed Internet at Midlothian |
| Omnitracs | 75250 | $ 10,866.41 | 60 | 4/20 | GPS Tracking/Two Way Messaging for Trucks |
| Hartford/Good Signature | N/A | $ 3,250.00 | 36 | 7/1 | Dallas office Rent |
| Acentium Capital (mulitple contracts) | 2152337 | 996.64 | 60 | 4/6/2020 | Satellite TV for trucks |
| | 2170002 | 997.33 | 60 | 12/17/2020 | |
| | 2157945 | 997.33 | 60 | 7/1/2020 | |
| | 2160638 | 997.33 | 60 | 8/3/2020 | |
| Asset Intelligence (multiple contracts) | 2000797 | | 36 | 8/14/2016 | Trailer Tracking Units |
| | 2000855 | Monthly Sum | 36 | 8/18/16 | |
| | 2000923 | of all contract | 36 | 11/18/16 | |
| | 2000958 | payments is | 36 | 2/23/17 | |
| | 2001044 | $5,279.50 | 36 | 12/15/17 | |
| | 2001185 | | 36 | 6/22/18 | |
| | 2001435 | | 36 | 8/13/18 | |
| | 2001464 | | 36 | 9/3/18 | |
| | OPP-07312 | | 36 | 2/3/19 | |